Katherine Franke (admitted *pro hac vice*)
Sulzbacher Professor of Law
Faculty Director, Law, Rights, and Religion Project
Columbia Law School
435 W. 116th Street
New York, NY 10027
katherine.franke@law.columbia.edu

*Attorney for Amicus Curiae Professors
Katherine Franke, Caroline Mala Corbin, Nelson Tebbe,
and Micah Schwartzman*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAJI DOUSA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP") KEVIN K. MCALEENAN, Acting Secretary of DHS; MATTHEW T. ALBENCE, Acting Director of ICE; MARK A. MORGAN, Acting Commissioner of CBP; AND PETER FLORES, Director of Field Operations for CBP, San Diego,<br><br>　　　　　　Defendants. | Case No. 19-cv-01255 (LAB)<br><br>**BRIEF OF AND BY PROFESSORS OF RELIGIOUS LIBERTY AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

Page

I. INTEREST OF THE AMICI CURIAE........................................................................................2

II. INTRODUCTION........................................................................................................................2

III. THE FIRST AMENDMENT'S ANTI-PERSECUTION PRINCIPLE …………………….…..4

IV. RFRA'S PROTECTIONS AGAINST RELIGIOUSLY TARGETED GOVERNMENT
    ACTION ……....………………………………………………………………………………7

V. STRICT SCRUTINY ANALYSIS USED IN CONSTITUTIONAL AND STATUTORY FREE
   EXERCISE/PERSECUTION CASES ………………………………………....………..........8

   1. The Plaintiff's Prima Facie Case ……………………………………....…………….…..8

      a. Does The Plaintiff Hold Beliefs That Are *Religious* In Nature?…………….…......9

      b. Are The Plaintiff's Religious Beliefs Sincerely Held? ....……….........…........…....11

      c. Are the Plantiff's Sincerely Held Religious Beliefs Substantially Burdened by
         the Government's Actions? .........……………….............…….…..……....12

   2. The Government's Burden in Opposing the Plaintiff's Religious Liberty
      Claims …………………………………………………………………………….…....14

      a. Do The Government's Actions In The Instant Case *Further A Compelling State
         Interest*? ………………………………………………………………….......................14

      b. Is The Burden Imposed On Plaintiff's Religious Beliefs The Least Restrictive
         Means Of Advancing A Compelling Government Interest? ………...…...............15

VI. CONCLUSION ……………………………………………………………..……....………16

# I. INTEREST OF THE AMICI CURIAE[1]

*Amici* Law Professors, all experts in constitutional law and specifically the law of religious liberty, seek to provide the Court with the proper framework within which to consider the merits of plaintiff's religious liberty claims raised under the First Amendment to the U.S. Constitution and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 (hereinafter "RFRA"). This case raises important and novel questions regarding the asserted targeting by agents of the United States government of a faith leader with surveillance, harassment, and other adverse treatment on account of the exercise of her religious beliefs; thus, it is imperative that the Court structure its ruling on the plaintiff's motion for a preliminary injunction in a way that will provide clear guidance to the parties herein and to other parties and courts in the future. As experts in the law of religious liberty in general, we offer this *amicus* brief to help guide the Court's review of the plaintiff's constitutional and statutory religious liberty claims.

# II. INTRODUCTION

Government action that targets religious exercise, while common in an earlier era, is infrequently alleged in the present period in which tolerance toward religious belief and diverse religious traditions, along with an appreciation of the value of protecting a plurality of faith-based beliefs, are respected by most governments. Exceptions, to be sure, can be found, particularly with respect to the religious exercise of members of minority faiths. But as Justice Kennedy recognized a generation ago "[t]he principle that government may not enact laws that suppress religious belief

---

[1] Counsel for a party did not author this brief in whole or in part and such counsel or a party did not make a monetary contribution intended to fund the preparation or submission of this brief.

[2] See e.g. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

[3] Several parties have been prosecuted by the federal government for violating federal immigration laws and have raised RFRA defenses to those prosecutions. *See e.g.*: *U.S. v. Scott*

2

or practice is so well understood that few violations are recorded in our opinions." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993).

This case involves the allegations of a Christian minister whose faith-based exercise is alleged to have garnered the negative attention of several branches of the US government. She is not seeking an exemption from the application of a generally applicable law, but rather claims that the U.S. government has subjected her to surveillance, harassment, and other adverse treatment on account of her religious exercise and/or protected religious expression. In this sense, the claims in this case differ from other recent religious liberty claims raised by faith-based actors whose religious practices were substantially burdened by laws of general application. These other cases have involved claims for exemptions from compliance with the law on account of the burden that the law imposes on religious exercise. Some claimants have sought an exemption from the Affordable Care Act's requirement that employee health plans include coverage for contraception,[2] while others have raised religious liberty claims as a defense in prosecutions for their faith-based acts providing aid to people seeking refuge in the US.[3] Here, by contrast, Pastor Dousa has not been investigated, charged, or prosecuted for any alleged violations of any law, and, as such, is not seeking an exemption from enforcement of otherwise generally applicable laws. Rather, her allegations are that she has been singled out by the federal government for surveillance, harassment, and other adverse treatment on account of her religious exercise and/or protected religious expression. In this respect, if the Court were to find the plaintiff's allegations founded, the case

---

[2] See e.g. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

[3] Several parties have been prosecuted by the federal government for violating federal immigration laws and have raised RFRA defenses to those prosecutions. *See e.g.*: *U.S. v. Scott Daniel Warren*, CR-18-00223-001-TUC-RCC (D.AZ); *U.S. v. Natalie Renee Hoffman, Oona Meagan Holcomb, Madeline Abbe Huse, Zaachila I. Orozco-McCormick*, 4:19-CR-00693-RM (D.AZ).

presents a rather obvious instance of religious persecution, precisely what the Free Exercise Clause of the First Amendment and RFRA were designed to protect against. As former Attorney General Jeff Sessions stated unequivocally in guidance issued to all executive departments and agencies interpreting religious liberty protections in federal law, "To avoid the very sort of religious persecution and intolerance that led to the founding of the United States, the Free Exercise Clause of the Constitution protects against government actions that target religious conduct." AG Jeff Sessions, *Mem. For All Exec. Dep'ts And Agencies*, "Federal Law Protections for Religious Liberty," Oct. 6, 2017, p. 2, available at https://www.justice.gov/opa/press-release/file/1001891/download (hereinafter "Federal Law Protections for Religious Liberty").

## III. THE FIRST AMENDMENT'S ANTI-PERSECUTION PRINCIPLE[4]

Among the most settled principles of constitutional law is the notion that "[t]he Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities" based on their 'religious status.' *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U. S. 533, 542," *Trinity Lutheran Church of Columbia, Inc. v. Come*r, 582 U.S. ___, ___ , 137 S.Ct. 2012, 2019 (2017) (internal quotation marks omitted). Indeed, it was precisely such "historical instances of religious persecution and intolerance that gave concern to those who drafted the Free Exercise Clause." *Church of Lukumi Babalu Aye,* 508 U.S. at 532 (internal quotation marks omitted).

Government action has been understood by the Supreme Court to be persecutory for the purposes of the Free Exercise Clause if it "impose[s] regulations that are hostile to the religious

---

[4] We will note that RFRA provides substantially similar protections against religious persecution as the First Amendment's Free Exercise Clause.

beliefs of affected citizens and [operates] in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. ___, ___, 138 S.Ct. 1719, 1731 (2018). "The Constitution 'commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures.'" *Id.*, quoting *Church of the Lukumi Babalu Aye*, 508 U.S. at 547. "[T]he Free Exercise Clause protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.' *Lyng*, 485 U. S., at 450." *Trinity Lutheran*, 137 S.Ct. at 2022. "The Free Exercise Clause bars even ''subtle departures from neutrality'' on matters of religion." *Masterpiece Cakeshop*, 138 S.Ct. at 1731, citing *Church of the Lukumi Babalu Aye.* 508 U.S. at 534. "[W]hen the government fails to act neutrally toward the free exercise of religion, it tends to run into trouble." *Masterpiece Cakeshop*, 138 S.Ct. at 1734 (Gorsuch J., concurring).

If the government has been found to have targeted a person on account of their religious practices or beliefs, to have exhibited animosity to religion, or distrust of a person's faith-based practices or beliefs, "the government can prevail only if it satisfies strict scrutiny, showing that its restrictions on religion both serve a compelling interest and are narrowly tailored." *Id.* This principle has been reaffirmed in several recent Supreme Court religious liberty cases. In *Trinity Lutheran Church*, the Court held that "a policy [that] imposes a penalty on the free exercise of religion [] triggers the most exacting scrutiny. *Lukumi*, 508 U. S., at 546." 137 S.Ct. at 2024. "Under that stringent standard, only a state interest 'of the highest order' can justify the [government's] discriminatory policy." *Id.* The Court in *Masterpiece Cakeshop* took an even more exacting approach to the allegation that the state had evidenced animosity toward a person's religious beliefs, even denying the state an opportunity to make a showing of compelling interest

5

that justified its actions, and finding instead that the presence of bias in the state's adjudication of an administrative discrimination claim amounted, *ipso facto,* to a violation of the Free Exercise Clause's neutrality principle. 138 S.Ct. at 1732. While we take issue with the Court's factual conclusion that evidence in the case demonstrated that government officers manifested bias toward religion, we do concur in the larger principle reaffirmed by the Court in *Masterpiece Cakeshop* that public actors cannot act in a manner that is "neither tolerant nor respectful of [a person's] religious beliefs." *Masterpiece Cakeshop*, 138 S.Ct. at 1731.

In the instant case, the plaintiff alleges that Defendants "targeted Pastor Dousa because of her pastoral service to migrants" and her expression of a theology of care and compassion toward migrants that conflicts with the policies of the US government, "'uniquely burdening' Pastor Dousa on account of her religious beliefs." Docket No. 22-1, p. 18. Were the Court to find that the plaintiff has proven these allegations, the government could overcome the strong presumption that its conduct violated the neutrality and anti-persecution principles of the First Amendment's Free Exercise Clause only if it were able to prove that it had a compelling reason to target Pastor Dousa because of her religious practices, and targeting these practices was the least restrictive manner in which the government could accomplish that compelling interest. When the government visits "gratuitous restrictions on religious conduct"; or "accomplishes . . . a 'religious gerrymander,' an impermissible attempt to target [certain individuals] and their religious practices" has taken place. *Church of the Lukumi Babalu Aye,* 508 U.S. at 533–35, 538 (internal quotation marks omitted).

As a matter of practice, courts have rarely, if ever, found that a government has satisfied the exacting requirement of strict scrutiny after it had been shown to have singled out a person for adverse treatment on account of their religious beliefs or exercise. Under *Church of the Lukumi Babalu Aye,* a law targeting religious beliefs, or one where "the object or purpose of a law is the suppression of religion or religious conduct," is never permissible. *Id.* at 533. "A law that targets

6

religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Id.* at 546.

### IV. RFRA'S PROTECTIONS AGAINST RELIGIOUSLY TARGETED GOVERNMENT ACTION

Congress enacted RFRA in 1993 in response to the Supreme Court's holding in *Employment Div., Dept. of Human Resources of Or. v. Smith*, 494 U.S. 872 (1990), that the Free Exercise Clause of the First Amendment "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id.* at 879 (internal quotation marks omitted). With RFRA, Congress sought "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)," that had been altered by the Court in *Smith*. 42 U.S.C. § 2000bb(b)(1). By reinstating as a statutory matter the pre-*Smith* free exercise standard, Congress recognized that laws, whether those of general applicability or those that explicitly target religious exercise, may impose a substantial burden on the religious exercise of some persons. Congress required that in circumstances where religious exercise is substantially burdened by state action, the government must justify such burden as furthering a compelling interest through narrowly tailored means. The Supreme Court affirmed this interpretation of the reach of RFRA in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) ("the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion.") (quoting 42 U.S.C. § 2000bb–1(a)).

Thus, RFRA provides a statutory scheme by which to assert violations of religious liberty where a person's religious exercise has been substantially burdened by government action. RFRA's protections extend to circumstances in which the burden on religious exercise is the result of

government action targeting that exercise, either explicitly on the face of the law or policy or through selective enforcement of an otherwise generally applicable law. So too, RFRA provides a civil remedy for substantial burdens placed on religious exercise even where the government has no specific intent to do so. The RFRA claim raised by the plaintiff herein is in the nature of the former, not the latter.

RFRA aims to provide substantial protection to the free exercise of religion while recognizing that this right is not absolute, insofar as it must yield where necessary to allow the government to implement a compelling public interest, or where the rights of third parties, for instance other citizens, are burdened by the overly solicitous accommodation of an individual's religious belief. Further, the First Amendment's Establishment Clause imposes a limit on the extent to which the government may accommodate the religious beliefs of citizens, as the government must ensure that an "accommodation [is] measured so that it does not override other significant interests" and does not "differentiate among bona fide faiths." *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).

**V. STRICT SCRUTINY ANALYSIS USED IN CONSTITUTIONAL AND STATUTORY FREE EXERCISE/PERSECUTION CASES**

Should the Court determine that it is appropriate to subject the government's actions to strict scrutiny, we offer the following doctrinal structure for that analysis.

**1. The Plaintiff's Prima Facie Case**

The person asserting a religious liberty claim must show i) that he or she holds a belief that is religious in nature; ii) that that belief is sincerely held; and iii) that his or her exercise of religious belief was substantially burdened by a federal law or policy. Once the person claiming a violation

of religious liberty rights has made out this showing, the burden shifts to the government to show that i) it has a compelling interest; and ii) that interest is being accomplished through the least restrictive means.  42 U. S. C. §2000bb–1(a), (b).

### a. Does The Plaintiff Hold Beliefs That Are *Religious* In Nature?

With respect to the showing required by the party claiming a violation of the Free Exercise Clause or RFRA, the claimant must first demonstrate with "the evidence of persuasion" (42 U.S.C. § 2000bb-2(3)) that he or she holds a belief that is *religious* in nature. This showing requires courts to consider the mixed question of whether, objectively, the claimant's beliefs are "religious," and whether, subjectively, the claimant him/herself understood the beliefs to be religious in nature. RFRA covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Burwell v. Hobby Lobby*, 573 U.S. 682, 696 (2014).

The government may argue that the defendants' beliefs are more socio-political or philosophical than religious in nature, as it has made this argument in recent cases where it sought to defeat religious liberty claims raised by faith-based organizations providing humanitarian aid to injection drug users[5] and to migrants.[6] Yet this framing of the kind of beliefs that receive constitutional and statutory protections is misplaced.  Nothing in the legislative history of RFRA or in the Supreme Court's interpretation of religious liberty protections either on the statutory or constitutional level requires that the party asserting a religious liberty right prove that their actions

---

[5] See e.g., *Mot. For J. on the Pleadings, U.S. v. Safehouse et al.,* Civil Action No. 19-0519, EDPA, ECF No. 47 at pp. 29-33, June 11, 2019.

[6] See e.g., *U.S. v. Hoffman et al.*, *Order on Defendants' Mot. to Compel*, Case No. 4:19-CR-00693-RM, D.AZ, Doc. 68, at 5, June 1, 2018 ("Defendants' proclaimed moral, ethical, and spiritual belief to assist humans in need of basic necessities appears to be a simple recitation "for the purpose of draping religious garb over [political or philosophical] activity[.]").

were motivated exclusively by their religious beliefs. For instance, in *Wisconsin v. Yoder*, the Supreme Court held that a belief that is based on "purely secular considerations" merits no protection under the free exercise clause. 406 U.S. 205, 215 (1972). Similarly, in cases addressing the claims of conscientious objectors under the Selective Service Act, the Supreme Court recognized that "their objections cannot be based on a 'merely personal' moral code," *United States v. Seeger*, 308 U.S. 163, 186 (1965), and rejected the government's argument that the objector's motivations had a "substantial political dimension." *Welsh v. U.S.*, 398 U.S. 333, 342 (1970). The Ninth Circuit clarified this point in *Callahan v. Woods*, 658 F.2d 672, 684 (9th Cir. 1981), when it observed that "a coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one … The devout Seventh-Day Adventist may enjoy his Saturday leisure; the Orthodox Jew or Mohammedan may dislike the taste of pork. Such personal considerations are irrelevant to an analysis of the claimants' free exercise rights." *Id.*

When addressing the question of whether a belief or ideology is religious in nature, courts have found that an action or position does not lose its religious character merely because it coincides with a particular political belief.  For example, in *Rigdon v. Perry*, 962 F.Supp. 150, 164 (D.D.C. 1997) the court recognized a priest's "desire to urge his Catholic parishioners to contact Congress on legislation that would limit what he and many other Catholics believe to be an immoral practice—partial birth abortion—is no less religious in character than telling parishioners that it is their Catholic duty to protect every potential human life by not having abortions and by encouraging others to follow suit."

In *Burwell v. Hobby Lobby Stores, Inc.*, the Supreme Court essentially applied this interpretation of the meaning of "religious" as it appears in RFRA by finding that the claimants' opposition to contraceptive coverage was religious in nature even though it also mirrored political beliefs about contraception and the Affordable Care Act.  573 U.S. 682, (2014).  At no time did the

Court find, or even suggest, that the beliefs of the religious liberty claimants lost their religious character because it was possible to hold a similar view on contraception, or on government regulation of health care, for non-religious reasons. Thus, the question for the Court in determining whether the claimant's beliefs are religious in nature is not whether one might undertake the same actions for secular reasons, but whether an action taken by *this* claimant for reasons that are religious *to them* in their own scheme of things. Similarly, the religiosity of the beliefs of the defendants herein should not be questioned merely because they happen to overlap with secular political beliefs about the rights and dignity of migrants and asylum seekers. Rather, the Court must determine the question of whether, objectively, the claimant's beliefs are "religious," and whether, subjectively, the claimant herself understood the beliefs to be religious.

### b. Are The Plaintiff's Religious Beliefs Sincerely Held?

Second, the religious liberty claimant must show that his or her religious beliefs are *sincerely held*. *Hobby Lobby,* 573 U.S. 682, 717 n. 28 ("To qualify for RFRA's protection, an asserted belief must be 'sincere'...."). "[T]he claimant's proffered belief must be sincerely held; the First Amendment does not extend to 'so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity.'" *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), *supplemented*, 65 F.3d 148 (9th Cir. 1995) (citations omitted). Accord, *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015). This element is a question of fact, proven by the credibility of the party asserting a religion-based defense. *United States v. Zimmerman*, 514 F.3d 851, 854 (9th Cir. 2007) (stating that sincerity is "a question of fact"); *Patrick v. LeFevre*, 745 F.2d 153, 157 (2nd Cir. 1984) (the sincerity analysis "demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during

direct and cross- examination"); *United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010) ("[S]incerity of religious beliefs 'is a factual matter.'"); *see generally* Kara Loewentheil and Elizabeth Reiner Platt, *In Defense of the Sincerity Test*, in RELIGIOUS EXEMPTIONS 247 (Kevin Vallier & Michael Weber eds., 2018).

Rather than merely reducing this element to a matter of pleading and accepting the claimants' assertion of sincerity or the Government's concession thereto, the Court should undertake a meaningful assessment of the factual basis for the claim to sincerity, including examination of the claimants' demeanor.

### c. Are the Plaintiff's Sincerely Held Religious Beliefs Substantially Burdened by the Government's Actions?

Next, the religious liberty claimant must show that the *exercise* of a sincerely held religious belief was *substantially burdened* by government action. This element is a question for the Court to decide as a matter of law. "While the Supreme Court reinforced in *Hobby Lobby* that we should defer to the reasonableness of the appellees' religious beliefs, this does not bar our objective evaluation of the nature of the claimed burden and the substantiality of that burden on the appellees' religious exercise." *Geneva Coll. v. Sec'y U.S. Dep't of Health & Human Servs.*, 778 F.3d 422, 436 (3d Cir. 2015). S*ee also Mahoney v. Doe,* 642 F.3d 1112, 1121 (D.C. Cir. 2011) (stating that judicial inquiry into the substantiality of the burden "prevent[s] RFRA claims from being reduced into questions of fact, proven by the credibility of the claimant"); *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) ("[a]ccepting as true the factual allegations that Kaemmerling's beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that his religious exercise is substantially burdened"); *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1144–45 (11th Cir. 2016); *Priests For Life v.*

*U.S. Dep't of Health & Human Servs.*, 772 F.3d 229, 247 (D.C. Cir. 2014), *vacated on other grounds and remanded sub nom. Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (noting that eight circuits have held that the question of substantial burden also presents "a question of law for courts to decide."). As Professor Frederick Mark Gedicks has argued persuasively, "[t]he rule of law demands that the determination whether religious costs are substantial should be made by impartial courts." Frederick Mark Gedicks, *"Substantial" Burdens: How Courts May (and Why They Must) Judge Burdens on Religion Under RFRA*, 85 GEO. WASH. L. REV. 94, 150–51 (2017).

The question of whether, as a matter of law, the RFRA plaintiff has shown a substantial burden on her religious beliefs "involves both subjective and objective dimensions. *Hobby Lobby* made clear that there is a subjective aspect to this inquiry: courts must accept a religious adherent's assertion that his religious beliefs require him to take or abstain from taking a specified action. The objective inquiry requires courts to consider whether the government actually 'puts' the religious adherent to the 'choice' of incurring a 'serious' penalty or 'engag[ing] in conduct that seriously violates [his or her] religious beliefs.'" *Eternal Word Television*, 818 F.3d at 1144 (citations omitted).

The Ninth Circuit has recognized two ways to understand the notion of substantial burden in the RFRA context: (1) *forcing* a person to choose between the tenets of their religion and a government benefit, or (2) being *coerced* to act contrary to religious belief by threat of civil or criminal sanctions. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069–70 (9th Cir., 2008). The former of these two formulations of substantial burden would apply most relevantly in this case, where the plaintiff asserts that government surveillance, harassment, and other adverse treatment on account of the exercise of her religious beliefs have forced her to forgo her ministry with migrants. This standard was elaborated upon further by the Ninth Circuit in *Snoqualmie Indian Tribe v. F.E.R.C.*, where the court described the problem of establishing a substantial burden as "a

13

Catch–22 situation: exercise of their religion under fear of civil or criminal sanction." 545 F.3d 1207, 1214 (9th Cir. 2008).

### 2. The Government's Burden in Opposing the Plaintiff's Religious Liberty Claims

If the plaintiff carries her burden of demonstrating that the government's actions imposed a substantial burden on the exercise of her sincerely held religious beliefs, relief should be granted unless the government can show that this burden is the least restrictive means of advancing a compelling government interest. *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.")

    **a.**    **Do The Government's Actions In The Instant Case *Further A Compelling State Interest*?**

A compelling interest must be clearly articulated and specific; "broadly formulated interests justifying the general applicability of government mandates" are not considered compelling. *O Centro*, 546 U.S. at 430–31. Thus, to prevail in carrying its burden of showing that the substantial burden placed on plaintiff's sincerely held religious beliefs is justified by a compelling state interest, the Court must find that the Government has proven a compelling interest in subjecting *the class of* people in *this* case to heightened surveillance, interrogation, and disparate treatment, that is, people ministering to migrants and/or whose faith-based beliefs commit them to an immigration policy that differs from that taken by the US government. As the Department of Justice has argued in other cases where it has supported the assertion of a RFRA exemption, "mere generalized concerns . . . are insufficient to prove a compelling governmental interest . . . the government the 'must show a compelling interest . . . in the particular case at hand, not a compelling interest in

general.'" Jefferson B. Sessions III, "Statement of Interest of the United States of America," *Roman Catholic Archdiocese of Kansas City in Kan. v. City of Mission Woods, Kan.*, Case No. 2:17-cv-02186-DDC (D. Kan., April 24, 2018), *available at* https://www.justice.gov/crt/case-document/statement-interest-roman-catholic-archdiocese-kansas-city-kansas-v-city-mission (citing *O Centro*, 546 U.S. at 432); *see also Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766, 788 (D. Md. 2008) ("A 'compelling interest' is not a general interest but must be particular to a specific case."), *aff'd*, 368 F. App'x 370 (4th Cir. 2010) (per curiam).

A compelling interest cannot rest on generalized assertions of the importance of border enforcement, national security, or immigration laws. Rather, the government must provide convincing evidence that the actions it has taken against this plaintiff were in furtherance of a compelling interest.

### b. Is The Burden Imposed On Plaintiff's Religious Beliefs The Least Restrictive Means Of Advancing A Compelling Government Interest?

To demonstrate that the application of the challenged law or policy is narrowly tailored, the Government must show that it could not achieve its compelling interest to the same degree while not subjecting the plaintiff and a class of similar parties to heightened surveillance, interrogation, and other disparate treatment. *United States v. Christie*, 825 F.3d 1048,1061 (9th Cir. 2016). This "focused inquiry" requires the government to justify why refraining from said treatment of the plaintiff would be unworkable. *O Centro*, 546 U.S. at 431.

The government's burden is to prove that there are no available or practicable alternative means of accomplishing the state's compelling interests that would be less burdensome on the plaintiff's religious beliefs. "The government must show 'that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the [plaintiffs].'"

15

*Eternal World Television*, 818 F.3d at 1158 (citation omitted). As Justice Blackmun noted in *Church of the Lukumi Babalu Aye,* "a law that targets religious practice for disfavored treatment both burdens the free exercise of religion and, by definition, is not precisely tailored to a compelling governmental interest." 508 U.S. at 579 (Blackmun, J. concurring).

### VI. Conclusion

The Free Exercise Clause and RFRA provide clear protections for religious liberty in essentially similar ways. Were the Court to find that the plaintiff's factual allegations are founded, both the Free Exercise Clause and RFRA provide schemes within which to analyze the claim that her religious liberty rights have been abridged. With this brief, *amici* provide the Court with the structure within which to assess those claims.

Respectfully submitted,

 /s/ Katherine Franke

Dated: September 9, 2019

Katherine Franke*
COLUMBIA UNIVERSITY
  SCHOOL OF LAW
435 W. 116th Street
New York, NY 10027
(212) 854-0061
katherine.franke@law.columbia.edu

*Attorney for Amici Professors of Religious Liberty Law Katherine Franke, Caroline Mala Corbin, Nelson Tebbe, and Micah Schwartzman*

* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of September, 2019, I caused Brief Of And By Professors Of Religious Liberty As *Amicus Curiae* In Support Of Neither Party On Plaintiff's Motion For Preliminary Injunction to be filed with the Clerk of Court of the United States District Court for the Southern District of California using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.

BY: */s/ Katherine Franke*
COLUMBIA UNIVERSITY
  SCHOOL OF LAW
435 W. 116th Street
New York, NY 10027
(212) 854-0061
katherine.franke@law.columbia.edu

*Attorney for Amici Professors of Religious Liberty Law Katherine Franke, Caroline Mala Corbin, Nelson Tebbe, and Micah Schwartzman*

\* admitted *pro hac vice*