ROBERT S. BREWER, JR.
United States Attorney
ERNEST CORDERO, JR
Assistant U. S. Attorney
California Bar No. 131865
E-mail: ernest.cordero@usdoj.gov
MICHAEL A. GARABED
Assistant U.S. Attorney
California Bar No. 223511
E-mail: michael.garabed@usdoj.gov
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-7478/7703
Facsimile: (619) 546-7751

Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAJI DOUSA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); KEVIN K. MCALEENAN, Acting Secretary of DHS; MATTHEW T. ALBENCE, Acting Director of ICE; MARK A. MORGAN, Acting Commissioner of CBP; and PETER FLORES, Director of Field Operations for CBP, San Diego,<br><br>　　　　　　Defendants. | Case No.:  19-cv-1255-LAB (KSC)<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>DATE:  September 23, 2019<br>TIME:  11:30 a.m.<br>CTRM: 14A<br><br>Hon. Larry A. Burns |

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................ 1

    A. Facts Related to Plaintiff's Border Crossing Activities .............................. 2
    B. Facts Primarily Related to Actions Involving Third Parties ...................... 6

II.   BACKGROUND FACTS AND ALLEGATIONS ................................ 2

III.  PLAINTIFF  LACKS  STANDING  TO  SEEK  A  PRELIMINARY INJUNCTION GRANTING THE RELIEF SOUGHT .................................... 7

    A. Plaintiff Cannot Show a Concrete and Particular Harm Coupled with a Real and Imminent Threat that She will Suffer Repeated Injury Judicial Estoppel ................................................ 8

        1. The Alleged Deprivation of Plaintiff's Expedited Border Crossing Privileges Due to the Supposed Revocation of her SENTRI Card .................................................................. 9
        2. The Alleged Risk of Being Required to Undergo Secondary Inspection When Crossing the U.S.-Mexico Border ........................... 9
        3. The Maintenance of Information on Plaintiff in CBP's Databases ...... 10
        4. Plaintiff Has Not Established that her Alleged Injuries are Fairly Traceable to Each Defendant .............................................. 11
        5. Plaintiff Cannot Obtain Injunctive or Other Equitable Relief Based on the Injuries of Non-Parties ............................................. 11

IV.   PLAINTIFF FAILS TO JUSTIFY THE NEED FOR A PRELIMINARY INJUNCTION ..................................................... 12

    A. Plaintiff Cannot Show a Likelihood of Success on the Merits or the Likelihood of Irreparable Harm ........................................ 15

        1. The Alleged Deprivation of Plaintiff's Expedited Border Crossing Privileges Due to the Supposed Revocation of her SENTRI Card .................................................................. 16
        2. The Alleged Risk of Being Repeatedly Required to Undergo Secondary Inspection When Crossing the U.S.-Mexico Border ......... 17
        3. The Maintenance of Information on Plaintiff in CBP's Databases ..... 18
        4. CBP's Actions Regarding Others ......................................... 19

    B. Neither the Equities Nor the Public Interest Favors an Injunction ........... 19

V.    PLAINTIFF HAS NOT ESTABLISHED THAT HER ALLEGED INJURIES ARE FAIRLY TRACEABLE TO EACH DEFENDANT .......... 20

VI.   PLAINTIFF CANNOT OBTAIN THE INJUNCTIVE RELIEF SOUGHT BECAUSE IT WOULD RESULT IN THE ENTRY OF A VAGUE, UNCERTAIN AND UNENFORCEABLE ORDER ..................... 21

VII.  CONCLUSION ............................................................... 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Committee on Judicial Conduct & Disability*,
    165 F.Supp.3d 911 (N.D. Cal. 2016) ............................................................... 9

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ...................................................................... 13

*American Trucking Associations, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ...................................................................... 12

*Brady v. United of Omaha Life Ins. Co.*,
    902 F.Supp.2d 1274 (N.D. Cal. 2012) ......................................................... 21

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) .................................................................. 13, 14

*Chapman v. Pier I Imps. (U.S.), Inc.*,
    631 F.3d 939 (9th Cir. 2011) .................................................................... 8, 15

*City of Los Angeles v. Lyons*,
    461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) .......................... 9, 12, 14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ............................. 10

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) ......................................................................... 7

*Confederate Tribes*,
    873 F.2d 1221 (9th Cir. 1989) ....................................................................... 7

*Dahl v. HEM Pharms. Corp.*,
    7 F.3d 1399 (9th Cir. 1993) ......................................................................... 13

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ....................................................................... 15

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ................................................................... 19

*Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.*,
  No. 14-CV-01918-JVS (JCGTx), 2014 WL 12597154 (C.D. Cal. Dec. 22, 2014) ..... 17

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ..................................................................... 15

*Flynt Distrib. Co. v. Harvey*,
  734 F.2d 1389 (9th Cir. 1984) .................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ................................... 8

*FW/PBS, Inc. v. Dallas*,
  493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ................................... 7

*Gill v. Whitford*,
  --- U.S. ---, 138 S. Ct. 1916, 201 L.Ed.2d 313 (2018) ................................. 11

*Goldie's Bookstore v. Superior Court*,
  739 F.2d 466 (9th Cir. 1984) ...................................................................... 14

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
  736 F.3d 1239 (9th Cir. 2013) .................................................................... 14

*In re Century Aluminum Co. Secs. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ............................................................ 15, 17

*In re Excel Innovations, Inc.*,
  502 F.3d 1086 (9th Cir. 2007) ............................................................ 13, 14

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) .................................................................... 14

*LAC v. Nationstar Mortgage, LLC*,
  No. 2:15-cv-00523-KJM-AC, 2016 WL 3135841 (E.D. Cal. June 2, 2016) .............. 14

*Landon v. Plasencia*,
  459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d  (1982) ..................................... 20, 21

*Lewis v. Casey*,
    518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed. 606 (1996) ............................................. 8, 11

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ...................................... 8

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) ...................................................................... 20

*Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ................................................................... 13

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) .................................................................... 8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F.Supp.2d 1197 (C.D. Cal. 2007)........................................................ 21

*Munaf v. Geren*,
    553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) ................................... 12

*N.L.R.B. v Express Publishing Co.*,
    312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 (1941) ........................................ 22

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
    762 F.2d 1374 (9th Cir. 1985)............................................................. 14, 15

*O'Shea v. Littleton*,
    414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ..................................... 12

*Pimentel v. Dreyfus*,
    670 F.3d 1096 (9th Cir. 2012)................................................................. 14

*Pouncil v. Tilton*,
    704 F.3d 568 (9th Cir. 2012)............................................................. 11, 20

*Republic of the Phillippines v. Marcos*,
    862 F.2d 1355 (9th Cir. 1988)................................................................. 14

*Ruff v. County of Kings*,
    No. CV-F-05-631 OWW/GSA, 2009 WL 5111766 (E.D. Cal. Dec. 18, 2009) .......... 21

*Salazar v. Buono*,
  559 U.S. 700, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010) ......................................... 19, 20

*San Diego Cnty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996)..................................................................................... 8

*Schmidt v. Lessard*,
  414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) ............................................... 21

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
  709 F.3d 1281 (9th Cir. 2013)................................................................................. 13

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984)............................................................................ 13, 15

*Spokeo, Inc. v. Robins*,
  --- U.S. ---, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) ........................................ 7, 9, 11

*Stanley v. University of Southern California*,
  13 F.3d 1313 (9th Cir. 1994)................................................................................... 13

*Stevens v. Harper*,
  213 F.R.D. 358 (E.D. Cal. 2002).............................................................................. 14

*Sud v. Costco Wholesale Corp.*,
  229 F.Supp.3d 1075 (N.D. Cal. 2017) ................................................................. 8, 11

*Summers v. Earth Island Institute*,
  555 U.S. 488, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) ............................................... 8

*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013)................................................................................... 11

*United States v. Ramsey*,
  431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977) ..................................... 10, 11, 17

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
  454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ............................................... 8

*Valley View Health Care, Inc. v. Chapman*,
  992 F.Supp.2d 1016 (E.D. Cal. 2014)............................................................ 7

*Van Dyke v. Regents of University of California*,
  815 F. Supp. 1341 (C.D. Cal. 1993)............................................................ 21

*Warth v. Seldin*,
  422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) .................................... 9

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305, 102 S.Ct. 1798 (1982) .......................................................... 20

*Wells Fargo & Co. v. ABD Inc. & Fin. Servs., Inc.*,
  758 F.3d 1069 (9th Cir. 2014).................................................................... 12

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) .............................. 12, 13

Statutes

6 U.S.C. § 211 ............................................................................................... 18
6 U.S.C. § 211(c)(9)................................................................................. 10, 18

Rules

Fed.R.Civ.P 65 ............................................................................................... 12
Fed.R.Civ.P. 65(b) ......................................................................................... 12
Fed.R.Civ.P. 65(d)(1)(C) ............................................................................... 21

# I.

## INTRODUCTION

Plaintiff is a pastor and immigration activist. On January 2, 2019, while returning to San Diego from Tijuana through the San Ysidro Port of Entry ("SYPOE"), Plaintiff was sent to secondary inspection. Plaintiff participates in the Global Entry Program that Customs and Border Protection ("CBP") makes available to trusted travelers who meet certain requirements and undergo a background check. Generally, Plaintiff is allowed expedited entry through the Global Entry Program, but this time she had to wait an extra 43 minutes while undergoing the additional screening. During her interview in secondary, Plaintiff was asked about her activities in Mexico and her work as a pastor. She then was released.

Plaintiff now seeks the extraordinary remedy of a preliminary injunction based primarily on speculation, news articles, inadmissible hearsay, and events involving other people. Plaintiff believes she has been "targeted" due to her activities on behalf of immigrants and the practice of her religion. She claims to be fearful of crossing into the United States at the SYPOE due to concern about being sent to secondary. Yet, she did so without incident on April 4, 2019. Plaintiff also claims to no longer have expedited entry privileges. But she used her Global Entry card when she crossed through the SYPOE in April; and she used those same privileges when she left New York City on a trip to the Bahamas on August 6, 2019.

As discussed below, Plaintiff does not meet her burden to show a concrete threat of future irreparable harm that would occur absent the injunction. She is able to enter the United States with her Global Entry card. She remains free to travel to Mexico, practice her religion, and voice her opposition to U.S. immigration policy. In fact, she does not make a sufficient showing of injury for standing to seek injunctive relief. She also cannot show a likelihood of prevailing on the merits. And even if she did, the injunctive relief she seeks is too vague and uncertain to be enforceable. For these reasons, and others to be discussed,

the motion for preliminary injunction should be denied.

## II.

## BACKGROUND FACTS AND ALLEGATIONS

### A.   Facts Related to Plaintiff's Border Crossing Activities

Plaintiff Kaji Dousa is a U.S. citizen and the Senior Pastor at Park Avenue Christian Church in New York City. Complaint, ECF No. 1, ¶ 22. She also is the Co-Chair of the New Sanctuary Coalition ("New Sanctuary"). *Id*. New Sanctuary is a faith-based network of congregations, organizations, and individuals devoted to immigrant rights. *Id*. Part of Plaintiff's work at New Sanctuary involves prayer vigils near federal immigration buildings. *Id*, ¶ 31. She also participates in New Sanctuary's Accompaniment Program which provides her opportunities to accompany immigrants who have immigration court dates and ICE check-in appointments. *Id*., ¶ 32.

In 2018, through New Sanctuary, Plaintiff helped organize a "Sanctuary Caravan." *Id*., ¶ 34. The goal of the caravan was to provide pastoral services, including prayer and church-blessed marriage ceremonies, to migrants seeking asylum in the United States. *Id*. The Sanctuary Caravan lasted 40 days and 40 nights with dozens of volunteers ministering to hundreds of asylum seekers in Mexico. *Id*.

On November 26, 2018, Plaintiff made her first trip to San Diego in connection with the Sanctuary Caravan. *Id*., ¶ 44. The purpose of her trip was to learn what on-the-ground organizing was in place to receive a large group of migrants traveling to the United States through Central and South America. *Id*. On November 27, 2018, the Sanctuary Caravan officially began its advance work and the group crossed the border to Tijuana to meet with a Sanctuary Caravan partner – El Otro Lado. *Id*., ¶ 45. The latter provides legal services to migrants on both sides of the border. *Id*. At a press conference via Facebook on the same day, Al Otro Lado announced that members of the clergy would be available to minister to migrants and officiate weddings. *Id*. Over the next couple of days, Plaintiff along with other clergy, officiated 17 weddings. *Id*. Plaintiff crossed the border twice without incident and

returned to New York City on November 29, 2018. *Id.*

On December 30, 2018, Plaintiff returned to San Diego to meet with Sanctuary Caravan leaders. *Id.*, ¶ 46. On January 1, 2019, while Plaintiff was in meetings in San Diego, confrontations erupted at the border between CBP and migrants. The incident, which involved the use of tear gas, received widespread coverage in the media. *Id.* Neither Plaintiff nor any clergy in the Sanctuary Caravan were present or participated in the confrontations. *Id.*

On January 2, 2019, the day after the confrontations, Plaintiff returned to Tijuana. *Id.*, ¶ 47. She posted a video to her Facebook page stating that she would be meeting with Sanctuary Caravan partners and hoped to learn about the prior day's confrontations. *Id.* By "tagging" the SYPOE on her Facebook post, she allowed people visiting her site to see where she was located. *Id.*

Around 4:30 p.m., Plaintiff began her return trip to San Diego. *Id.* Upon reaching the SYPOE, she presented her TSA-issued Global Entry card. *Id.*, ¶ 48. She then was sent to the secondary inspection area. *Id.* Although she had crossed the border several times before with her Global Entry card, this was the first time she was sent for secondary screening. *Id.*

Plaintiff alleges she remained in the waiting area for several hours. *Id.*, ¶ 50. But CBP records indicate only about 43 minutes passed between the time she was sent to secondary and her release by CBP. Declaration of Saro Oliveri ("Oliveri Decl."), ¶ 6. Although Plaintiff asked CBP officers for the reasons she was being held for further screening and the amount of time it would take, they did not tell her. Complaint, ¶ 50. While waiting, Plaintiff put on her clerical collar to identify herself as a member of the clergy. *Id.* CBP officers told her that she would not be allowed to go until questioned by unspecified officials. *Id.* She was allowed to use a desk phone to call her husband but he did not answer. *Id.*

Finally, an officer in a uniform different than those worn by CBP officers brought her to a cubicle to question her. *Id.*, ¶ 51. The officer asked her for personal identification

information, how many times she had crossed the border, and the reasons she was in Tijuana. *Id*. He also asked about her work with the "migrant caravan." *Id*. In addition, the officer inquired about Plaintiff's work with New Sanctuary and whether she encouraged asylum seekers to lie in their asylum applications. *Id*. ¶ 52. Plaintiff denied helping them lie and indicated that she sometimes would assist them in explaining what caused them to flee their homes. *Id*. The officer asked if she was involved in illegal activities which Plaintiff denied. *Id*., 53. He did not ask about the January 1, 2019 confrontations between the migrants and CBP officials at the border or human smuggling. *Id*.

Upon completion of the interview, Plaintiff shared her business card with the officers. *Id*., ¶ 54. They did not share contact information with her but did provide their names. *Id*. They also returned her Global Entry card. *Id*.

On March 6, 2019, NBC 7 San Diego published what appeared to be internal Department of Homeland Security ("DHS") documents purportedly from a whistleblower. Complaint, ¶ 56. Plaintiff contends that the documents are part of CBP's "Operation Secure Line" and contain data on fifty-nine individuals collected by DHS, the Federal Bureau of Investigation ("FBI") and CBP's International Liaison Unit. *Id*., ¶¶ 56-57. The information includes photographs (usually from passports or social media) and personal information such as date of birth, whether an alert has been placed on a passport, suspected connections to immigrants, and any history of arrest, interviews or adverse immigration actions. *Id*., ¶ 59. Plaintiff also contends that dossiers have been created with personal information and that some of the individuals involved have been flagged for enhanced secondary screenings. *Id*., ¶ 61.

Plaintiff also learned of CBP officials allegedly telling NBC 7 San Diego that "the names in the database are all people who were present during the violence that broke out at the border in November." Complaint, ¶ 72. Plaintiff was not present in the area on that day. *Id*., ¶ 72. While viewing the documents online, Plaintiff also noticed her picture with an "x" drawn through it and the words "SENTRI Revoked." *Id*., ¶ 62. Plaintiff contends she

received her SENTRI (Secure Electronic Network for Travelers Rapid Inspection) membership in June 2016; and she used her SENTRI status to enter the United States without incident several times before January 2019. *Id.*, ¶¶ 64-65. Because of what she saw on the Internet regarding her SENTRI status, she "believes" it has been revoked. Declaration of Plaintiff Kaji Dousa ("Dousa Decl."), ECF No. 25-1, ¶ 32 ("As far as I know, my SENTRI status is still revoked.").

In truth, Plaintiff does not know if her SENTRI status has been revoked because she either never had a SENTRI card or, alternatively, has not used it in years due to the greater entry privileges she enjoys with her Global Entry card.[1]  Plaintiff's Global Entry card was issued on December 14, 2016 and has never been revoked or suspended. Oliveri Decl., ¶ 4. It currently is valid and expires on August 22, 2022. *Id.*

By her own admission, Plaintiff used her Global Entry card to enter at the SYPOE on January 2, 2019 – the day she was sent for secondary inspection. Dousa Decl. ¶ 19; *see also* Complaint, ¶¶ 47-48. It was given back to her when she left. Dousa Decl., ¶ 27. Plaintiff also acknowledges that she crossed the border on several prior occasions - each time using her Global Entry card. *Id.*, ¶ 19.

CBP records indicate Plaintiff entered the United States at the SYPO four times during the eighteen-month period from February 2018 through August 2019. *Id.*, ¶ 5. Three times, she used her Global Entry card. Specifically, she used it when crossing as a pedestrian on (1) November 27, 2018; (2) January 2, 2019; and (3) April 4, 2019. She also crossed on November 28, 2018, but this time she used her U.S. Passport which likely was linked to her Global entry number. *See Id.*, ¶ 3.

---

[1] SENTRI is one of CBP's Trusted Traveler Programs. Oliveri Decl., ¶ 3. Another is the Global Entry Program. *Id.* Global Entry and SENTRI are both Trusted Traveler Programs that provide some overlapping benefits, but they also have differences. *Id.* For example, both Global Entry and SENTRI allow for expedited entry at land ports when crossing from Mexico and Canada. *Id.* However, Global Entry also can be linked to a passport for use when arriving by air. *Id.* With respect to someone returning to the United States from Mexico on foot or in an automobile, Global Entry and SENTRI provide the same expedited clearance benefits. *Id.*

On April 4, 2019, after spending time in Tijuana, Plaintiff again entered the United States at the SYPOE with her Global Entry card. Oliveri Decl., ¶ 3. This time, she was not sent to secondary inspection. *Id*. This was three months after January 2, 2019, the day she entered at the SYPOE and was sent to secondary. *Id*.[2] As of August 15, 2019, Plaintiff had not again sought entry through the Port. *Id*., ¶ 5. On August 6, 2019, Plaintiff left New York City on a flight to the Bahamas without incident. *Id*., ¶ 6.

Plaintiff asserts she no longer has access to the expedited screening she enjoyed as a SENTRI holder, which makes it more difficult to cross the border. Complaint, ¶ 82. This is not true. As discussed above, she has the same expedited entry privileges using her Global Entry card. Oliveri Decl., ¶ 3. Because of CBP's alleged "surveillance" and "retaliation" against her, Plaintiff contends that she no longer can be assured her interactions with migrants will be "private." *Id*., ¶¶ 75-87. She fears some migrants will damage their chances for asylum due to their association with her. *Id*., ¶ 84. Since learning of the alleged surveillance, she has curtailed her ministry at the Southern Border and abstained from performing marriages of migrants. *Id*., ¶¶ 81, 87.

## B.    Facts Primarily Related to Actions Involving Third Parties

Plaintiff alleges that CBP has targeted others who offer aid, counsel or ministry to migrants. *Id*., ¶ 88. In particular, she cites CBP's efforts to remove Jean Montrevil and Ravi Ragbir, two individuals associated with New Sanctuary. *Id*., ¶¶ 93-94. Mr. Montrevil was

---

[2] Prior to Plaintiff's filing of her motion for preliminary injunction, counsel for the parties conferred about a proposed informal exchange of relevant documents and information, including documents related to the alleged SENTRI card. In an effort to obtain information, counsel for the Federal Defendants inquired and was told by a contact at CBP that Plaintiff had a SENTRI card. The individual did not have access to information about any possible revocations or suspensions. In an effort to verify this fact, and obtain additional information, counsel contacted a higher level official, CBP Officer Oliveri, who has been the CBP Branch Chief at the Port of Otay Mesa for the last ten years. Oliveri Decl., ¶ 1. As the Branch Chief, he is responsible for the Trusted Traveler Enrollment Center. *Id*. He clarified that Plaintiff has a Global Entry card. *Id*., ¶ 2.

In light of this information, counsel for the Federal Defendants requested Plaintiff's attorneys to informally produce a copy of Plaintiff's alleged SENTRI card or at least some evidence of it. Plaintiff's attorneys did not do so even though the alleged revocation of Plaintiff's SENTRI card is a key fact underlying her request for injunctive relief. *See* Joint Motion for Determination of Discovery Dispute, ECF No. 33, pp. 18-19.

removed based on a drug charge. *Id.*, ¶ 93. Mr. Montrevil was ordered removed but is contesting his removal in the courts. *Id.*, ¶¶ 96-99. Plaintiff fears she also will suffer alleged retaliation for her work with migrants. *Id.*, ¶ 100.

Plaintiff, based on various media reports, also believes others who have assisted migrants have been targeted for increased screening and interrogation at the SYPOE. *Id.*, ¶¶ 102-105. On information and belief, she specifically identifies 5 individuals who allegedly have been targeted as part of Operation Secure Line and subjected to CBP's enhanced screening when traveling internationally. *Id.*, ¶¶ 106-119.

## III.

## PLAINTIFF LACKS STANDING TO SEEK A PRELIMINARY INJUNCTION GRANTING THE RELIEF SOUGHT

Judicial power is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock west, Inc. v. Confederate Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). As the party invoking subject matter jurisdiction, Plaintiff bears the burden of proving standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Standing is determined by the facts that exist at the time the complaint is filed. *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

A plaintiff must establish standing to invoke federal court jurisdiction over declaratory and injunctive relief claims. *See Valley View Health Care, Inc. v. Chapman*, 992 F.Supp.2d 1016, 1030 (E.D. Cal. 2014). To seek injunctive relief, the plaintiff must show (1) he is under threat of suffering a concrete and particularized injury in fact; (2) the threat must be actual and imminent, not conjectural or hypothetical; (3) it must be fairly traceable to the challenged conduct of the defendant; and (4) it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island*

*Institute*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Plaintiff must show a real and immediate threat of repeated injury. *Chapman v. Pier I Imps. (U.S.), Inc*., 631 F.3d 939, 948 (9th Cir. 2011). Past injury is insufficient. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunctive relief only, there is a further requirement that they show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury."); *see also Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) ("Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects.").

"[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358, n. 6, 116 S.Ct. 2174, 135 L.Ed. 606 (1996). Rather, a plaintiff must demonstrate standing for each claim and form of relief sought. *Friends of the Earth, Inc*., 528 U.S. at 185, 120 S.Ct. 693; *see also Mayfield*, 599 F.3d at 969 ("[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as declaratory judgment."). Standing also must be established as to each defendant. *See Sud v. Costco Wholesale Corp*., 229 F.Supp.3d 1075, 1081 (N.D. Cal. 2017). Plaintiff cannot meet the standing requirements.

### A.   Plaintiff Cannot Show a Concrete and Particular Harm Coupled with a Real and Imminent Threat that She will Suffer Repeated Injury

To establish an injury in fact, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff must personally have suffered an actual or threatened injury. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The injury must be

real, not abstract. *Spokeo,* 136 S.Ct. at 1548. A person seeking injunctive relief cannot rely on past wrongs to satisfy the injury requirement.  Past exposure to illegal conduct does not establish a present case or controversy unless accompanied by continuing, present adverse effects. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Plaintiff must allege a distinct injury to herself. She cannot base her claim for relief on the legal rights or interests of others. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Adams v. Committee on Judicial Conduct & Disability*, 165 F.Supp.3d 911, 920 (N.D. Cal. 2016). As discussed below, Plaintiff cannot meet her burden to show she has suffered a concrete and particularized harm with a real and imminent threat of further repeated injury.

### 1.     The Alleged Deprivation of Plaintiff's Expedited Border Crossing Privileges Due to the Supposed Revocation of her SENTRI Card

Even if CBP revoked Plaintiff's alleged SENTRI card – something she fails to establish – Plaintiff has not lost her expedited border crossing privileges. Those continue to be available through her membership in the Global Entry program.

In fact, the government voluntarily produced to Plaintiff's counsel a record of all of Plaintiff's crossings from Mexico into the United States within last 18 months, including evidence that Plaintiff's Global Entry pass is valid and not scheduled to expire until 2022. *See* Oliveri Decl. at ¶ 4. This information refutes Plaintiff's allegation that her expedited access has been revoked.

### 2.     The Alleged Risk of Being Required to Undergo Secondary Inspection When Crossing the U.S.-Mexico Border

The core allegation at the heart of Plaintiff's suit – that she was "singled out" for secondary screening on January 2, 2019 – occurred more than nine months ago. Approximately three months following that event, Plaintiff crossed into Mexico and

returned through the same port of entry using the same Global Entry card without incident. Oliveri Decl., ¶¶ 5-6. Plaintiff then waited almost four additional months before filing this suit.  Plaintiff has never been prevented from crossing the border, nor does she allege any intent to travel to Mexico in the near future.  And even if she did, there is no evidence her ability to travel would be impacted.

CBP has substantial authority to question travelers crossing into this country. *See United States v. Ramsey*, 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). Plaintiff has been sent to secondary inspection only once out of the four times she entered the United States at the SYPOE in the last 18 months. Moreover, she entered without incident several months after the time she was questioned by CBP.

Of course, there is no guarantee Plaintiff will never again be questioned in the secondary inspection area upon entering the United States. She, like all border crossers, is subject to inspection. But she has shown no objectively reasonable likelihood of harassment solely for the purpose of interfering with her First Amendment rights or the practice of her religion. There is no showing she will suffer future injury absent an injunction. A highly attenuated series of possibilities does not satisfy the requirement that the threatened injury must be impending with a reasonable likelihood that the injury will occur. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).

### 3.     The Maintenance of Information on Plaintiff in CBP's Databases

Plaintiff speculates, but cannot show, that CBP's maintenance of her personal information in a database reflects an attempt to violate her First Amendment rights. But, as a participant in the Global Entry program, CBP must maintain personal information on her. Furthermore, in order to carry out its responsibilities, CBP is statutorily directed to "develop and implement screening and targeting capabilities, including the screening, reviewing, identifying, and prioritizing of passengers and cargo across all international modes of transportation." 6 U.S.C. § 211(c)(9). Congress further directed CBP to establish "targeting operations within [CBP] to collect and analyze traveler and cargo information in advance

of arrival in the United States to identify and address security risks….” *Id.* § 211(g)(4)(C)(i). Plaintiff has not shown that CBP's maintenance of her personal information falls outside of its Congressional authorization. [3]

### 4. Plaintiff Has Not Established that her Alleged Injuries are Fairly Traceable to Each Defendant

Plaintiff must show she has standing to bring her claims against each defendant. *See Sud*, 229 F.Supp.3d at 1081. A government official is a proper defendant to a claim for prospective injunctive relief if the official would be responsible for ensuring the injunctive relief is carried out, even if not personally involved in the conduct giving rise to the claim. *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012). Here, Plaintiff has not alleged how each of the individual officials sued as defendants personally caused her injury or is responsible for ensuring that injunctive relief, if obtained, will be carried out.

### 5. Plaintiff Cannot Obtain Injunctive or Other Equitable Relief Based on the Injuries of Non-Parties

Plaintiff complains that others are similarly affected. But an injury-in-fact for standing purposes must affect the plaintiff in a personal and individual way. *Spokeo*, 136 S.Ct. at 1548. She cannot obtain an injunction based on conduct directed at others. Both Article III and equitable principles require that injunctive relief be limited to redressing a plaintiff's own injuries stemming from a violation of his or her own rights. *Gill v. Whitford*, --- U.S. ---, 138 S. Ct. 1916, 1934, 201 L.Ed.2d 313 (2018). The remedy sought must be limited to the "inadequacy that produced the injury in fact" alleged by the plaintiff. *See Lewis v Casey*, 518 U.S. 343, 357 (1996); *see also Gill*, 138 S. Ct. at 1934 ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."). Plaintiff has no

---

[3] Notably, the government's right to conduct searches at an international border is broad and requires no probable cause. *See United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013) (noting that "border searches are generally deemed 'reasonable simply by virtue of the fact that they occur at the border'") (citing *Ramsey*, 431 U.S. at 616, 97 S.Ct. 1972)).

standing to seek injunctive and declaratory relief on behalf of non-parties to this case.

## IV.

### PLAINTIFF FAILS TO JUSTIFY THE NEED FOR A PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed.R.Civ.P. 65(b). A preliminary injunction is an extraordinary and drastic remedy. *Munaf v. Geren*, 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008). It "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). A plaintiff must establish four elements to obtain a preliminary injunction: (1) likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) the public interest favors an injunction. *Wells Fargo & Co. v. ABD Inc. & Fin. Servs., Inc*., 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Irreparable harm must be likely, not just possible. *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). [4] The injury or threat of injury must be both real and immediate, not conjectural or hypothetical. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). "Absent a sufficient likelihood that [Plaintiff] will again be wronged in a similar way, [Plaintiff] is no more entitled to an injunction than any other citizen …." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that

---

[4] In *Winter*, the Supreme Court disapproved of the Ninth Circuit's "possibility of irreparable injury" standard as too lenient and emphasized that irreparable injury has to be shown as "likely" absent an injunction. *Winter*, 555 U.S. at 22. In light of *Winter*, the Ninth Circuit has held that earlier cases suggesting the lesser "possibility of injury" standard are no longer controlling or viable. *American Trucking Associations, Inc*., 559 F.3d at 1052.

may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The threat of irreparable harm also must be "immediate" to warrant preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Furthermore, "speculative" injury cannot be the basis for a finding of irreparable harm. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

In the Ninth Circuit, a plaintiff also may obtain a preliminary injunction under the "serious questions" test by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation omitted). A "serious question" is one where the moving party has "a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). Even under the "serious questions" analysis, the other two parts of the *Winters* test also must be satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013).

Preliminary injunctions can take two forms. *Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009). A prohibitory injunction restrains a party from further action, while a mandatory injunction orders a party to take certain action. *Id*. A request for "mandatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (internal quotations omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879 (internal quotation marks omitted); *see also Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (mandatory preliminary injunctions should be denied unless the facts and law clearly favor the moving party).

The weight given to evidence submitted in support of a preliminary injunction is within the discretion of the court. *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc*., 762 F.2d 1374, 1377 (9th Cir. 1985). The rules of evidence do not apply strictly to preliminary injunction hearings. *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc*., 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013). "[T]he court may rely on declarations, affidavits, and exhibits, among other things, and this evidence need not conform to the standards that apply at summary judgment or trial." *LAC v. Nationstar Mortgage, LLC*, No. 2:15-cv-00523-KJM-AC, 2016 WL 3135841, at *4 (E.D. Cal. June 2, 2016) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009)). The Court may accept hearsay at its discretion. *Republic of the Phillippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."). The court also may assess credibility when ruling on a motion for preliminary injunction. *LAC v. Nationstar Mortgage LLC*, No. 2:15-cv-00523-KJM-AC (TEMP), 2016 WL 3135841, at *4 (E.D. Cal. June 1, 2016).

Notwithstanding the foregoing discretion, a court cannot grant a preliminary injunction based on speculation. *Caribbean Marine Servs. Co,* 844 F.2d at 674; *see also Stevens v. Harper*, 213 F.R.D. 358, 370 (E.D. Cal. 2002) ("[T]he court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative."). A plaintiff must credibly allege that he faces a realistic threat of future harm. *Lyons*, 461 U.S. at 105-08 & n. 8, 103 S.Ct. 1660. "Speculative injury does not constitute irreparable harm." *Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984); *In re Excel Innovations, Inc*., 502 F.3d at 1098.

A district court's grant or denial of a preliminary injunction is reviewed under an abuse of discretion standard. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). The district court's application of the correct rule will be affirmed unless illogical, implausible or without support from inferences drawn from facts in the record. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.    Plaintiff Cannot Show a Likelihood of Success on the Merits or the Likelihood of Irreparable Harm**

"Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors … in the absence of serious questions going to the merits …." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal quotes and citations omitted).  Even under the "serious questions" test, Plaintiff cannot demonstrate "a fair chance of success on the merits." *Sierra On-Line, Inc.* 739 F.2d at 1421. Where a plaintiff seeks injunctive relief, he or she must show not only a prior injury, but also a real and immediate threat of repeated injury. *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 948 (9th Cir. 2011). A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc.*, 762 F.2d at 1377.

Facts alleged in the Complaint should not be given much weight to the extent they do not support a plausible claim. The credibility of a complaint's allegations depends on whether alternative explanations for the defendant's alleged behavior would not give rise to liability.

> "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).[5]

Here, the gravamen of the Complaint's four claims is CBP's alleged interference with Plaintiff's exercise of her First Amendment rights and religion. Even taken as a whole, the

---

[5] The Federal Defendants will expand on this argument in their Motion to Dismiss the Complaint.

allegations do not state plausible claims. Plaintiff attributes to CBP improper motives when describing its alleged conduct but does not exclude other possible explanations that would not result in liability.

### 1. The Alleged Deprivation of Plaintiff's Expedited Border Crossing Privileges Due to the Supposed Revocation of her SENTRI Card

Plaintiff contends she has a SENTRI card that CBP revoked in an effort to suppress her First Amendment rights. She has not attached a copy of the card to her Complaint or cited to any evidence to support her contention. Moreover, although she seeks an injunction requiring the restoration of the alleged card, she concedes that she does not know if it currently is suspended. Dousa Decl., ECF No. 25-1, ¶ 32 ("**As far as I know**, my SENTRI status is still revoked." (emphasis added)). Her Complaint further indicates that she believes her SENTRI status had once been revoked. But the belief is based on information obtained from an NBC 7 San Diego news story – not personal knowledge.

Plaintiff also alleges she has been damaged by the purported revocation of her SENTRI status. Specifically, she claims that she no longer can cross the U.S.-Mexico border with expedited entry privileges. This is untrue. Even if CBP revoked her alleged SENTRI card, Plaintiff continues to have expedited border crossing privileges available through her membership in the Global Entry program. Furthermore, she has used her Global Entry privileges to enter the United States on multiple occasions over the past 18 months. If she ever had a SENTRI card, the enhanced benefits of the Global Entry program have rendered the SENTRI card of no use to her. It also is not plausible that CBP would revoke the SENTRI card as a punishment while leaving her with the more valuable Global Entry status that allows her even more privileges. If punishment were the goal, revocation of the SENTRI card would be a senseless action given that Plaintiff has Global Entry card.

///

///

## 2.   The Alleged Risk of Being Repeatedly Required to Undergo Secondary Inspection When Crossing the U.S.-Mexico Border

Plaintiff's allegations about CBP's motives for sending her to secondary screening, her fear about it, and the likelihood it will happen again, are not plausible. She claims to be afraid to cross the border at the SYPOE. Yet, approximately three months after her January 2, 2019 crossing (when she was sent to secondary), Plaintiff crossed into Mexico and returned through the same port of entry without incident using her Global Entry pass. Oliveri Decl., ¶¶ 5-6.[6] Plaintiff does not allege that she has ever been prevented from crossing the border. She also has not alleged or otherwise demonstrated an objectively reasonable likelihood she will repeatedly be sent to secondary inspection. Whether it will happen in the future when returning to the United States through the SYPOE is nothing more than speculation.

There also is a plausible alternative explanation for why Plaintiff was sent to secondary on January 2, 2019 that does not involve improper motives. Pursuant to the "long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country," *Ramsey*, 431 U.S. at 616, 97 S.Ct. 1972, CBP has substantial authority to question travelers upon reentry into the United States.

Just days before Plaintiff crossed the border on January 2, 2019, there had been coordinated attempts by large groups of migrants to enter the United States illegally. These led to confrontations with CBP. Although Plaintiff was not in Mexico at the time, on the day she was sent to secondary for questioning, she had posted a video to her Facebook page

---

[6] Plaintiff contends she is afraid to cross the U.S.-Mexico border due to the alleged conduct of CBP. But this assertion is not credible. In fact, Plaintiff recently boasted on her Twitter feed @KajiDousa that "Because I have a voice and won't be intimidated – even by the most powerful government in the world – I am suing #DHS #ICE #CBP." *See* Declaration of Ernest Cordero, Jr. ("Cordero Decl."), Exhibit 1, p. 1. Plaintiff also does not shy away from controversy or engagement. Rather, as evident from her Twitter postings, she is an experienced activist who regularly networks with organizations seeking to bring about political and social change in various areas, especially with respect to U.S. immigration policy. *Id*. The Court may take judicial notice of the Twitter feed pursuant to Federal Rule of Evidence 201(b). *Dzinesquare, Inc. v. Armano Luxury Alloys, Inc*., No. 14-CV-01918-JVS (JCGTx), 2014 WL 12597154, at *3 (C.D. Cal. Dec. 22, 2014).

stating that she would be meeting with Sanctuary Caravan partners and hoped to learn about the prior day's confrontations. By "tagging" the SYPOE on her Facebook post, she allowed people visiting her site to see where she was located. Given the publicity surrounding her visit, which included information on various websites about the Sanctuary Caravan, it would not be surprising or improper for CBP to ask Plaintiff questions about her activities in Mexico. She also invited a discussion about her religious activities by putting on her clerical collar just before the questioning began. In sum, Plaintiff's questioning at the secondary inspection area was neither unusual nor improper. Plaintiff's pleading of an improper motive is only speculation and is refuted by an alternative, plausible explanation.

### 3.   The Maintenance of Information on Plaintiff in CBP's Databases

Plaintiff also speculates in her Complaint that CBP maintains information on her in a database, and that it reflects an attempt to violate her First Amendment and religious rights. But CBP can maintain information about border crossers as part of a legitimate law enforcement function. In fact, it would be very surprising if CBP did not maintain information on Plaintiff given her membership in the Global Entry program. CBP is responsible for enforcing hundreds of laws and regulations, including, among others, those addressing immigration, customs, trade, narcotics and the safety of agricultural products and other goods. *See* 6 U.S.C. § 211.

In order to carry out these responsibilities, CBP is statutorily directed to "develop and implement screening and targeting capabilities, including the screening, reviewing, identifying, and prioritizing of passengers and cargo across all international modes of transportation." 6 U.S.C. § 211(c)(9). Congress further directed CBP to establish "targeting operations within [CBP] to collect and analyze traveler and cargo information in advance of arrival in the United States to identify and address security risks." *Id*. § 211(g)(4)(C)(i). These rules allow CBP Officers to inspect a person, shipment, or conveyance even though an individual may not have been previously associated with a law enforcement action or otherwise be noted as a person of concern to law enforcement. Clearly, CBP may utilize

databases of information in fulfilling its mission responsibilities relating to border security. Therefore, there is a plausible explanation for CBP's maintenance of personal information on Plaintiff in a database.

### 4.     CBP's Actions Regarding Others

In her Complaint and arguments, Plaintiff references removal enforcement actions taken by CBP with respect to two other individuals. Plaintiff alleges no facts showing CBP's conduct direct at those individuals was intended to restrict the exercise of her First Amendment rights and religion. She merely speculates on CBP's motive. It is more plausible that CBP took action against the individuals because each was in violation of one or more immigration laws or otherwise subject to removal.

Similarly, Plaintiff alleges that CBP maintains personal information on other immigration activists. Even if true, the people she identifies have crossed the U.S.-Mexico border, in some cases have SENTRI or Global Entry passes, and have spent time in Mexico engaging with migrants who seek to immigrate to the United States. It would not be unusual or improper for CBP to maintain information on those individuals for the same reasons it may retain personal information about Plaintiff. This is a more plausible explanation than Plaintiff's speculative theory.

### B.     Neither the Equities Nor the Public Interest Favors an Injunction

"Equitable relief is not granted as a matter of course ... and a court should be particularly cautious when contemplating relief that implicates public interests..." *Salazar v. Buono*, 559 U.S. 700, 714, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010) (citations omitted). When the Government is a party, the last two *Winters* factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, Plaintiff continues to have expedited border crossing privileges. Her travel to Mexico to help migrants has not been impeded.

On the other hand, the Supreme Court recognizes as weighty the Government's interest in the efficient administration of immigration laws at the border. *Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 321 (1982). "[W]here an injunction is asked which will adversely affect a public interest… the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798 (1982) (citation and internal quotations omitted).

Here, Plaintiff seeks injunctive relief that would restrain the Federal Defendants "from taking any future adverse action against [Plaintiff] based on her protected expression, association or religious exercise." The proposed injunctive relief is so vague and subject to legal interpretation that it is unworkable. It would interfere with CBP's legitimate immigration functions by requiring a legal analysis every time CBP performs legitimate immigration functions involving Plaintiff and those associated with her.

## V.

## PLAINTIFF HAS NOT ESTABLISHED THAT HER ALLEGED INJURIES ARE FAIRLY TRACEABLE TO EACH DEFENDANT

Plaintiff must show she has standing to bring her claims against each defendant. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). A government official is a proper defendant to a claim for prospective injunctive relief *if the official would be responsible for ensuring the injunctive relief is carried out*. *Pouncil*, 704 F.3d at 576. Here, Plaintiff has not alleged how each of the individual officials sued as defendants personally caused her injury or is responsible for ensuring that injunctive relief, if obtained, will be carried out. Therefore, she has not alleged viable claims against each individual official sued.

The need for Plaintiff to limit her suit to the proper defendants is especially important in this case because it involves the administration of immigration and national security laws at the U.S.-Mexico border. As recognized by the Supreme Court, "a court should be

particularly cautious when contemplating relief that implicates public interests…" *Salazar*, 559 U.S. at 714, 130 S.Ct. 1803 (citations omitted). Here, there is a substantial government interest in the efficient administration of immigration laws at the border. *See Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 321 (1982). An injunction that applies to more government officials than necessary interferes with CBP's discharge of its immigration and law enforcement duties

## VI.

## PLAINTIFF CANNOT OBTAIN THE INJUNCTIVE RELIEF SOUGHT BECAUSE IT WOULD RESULT IN THE ENTRY OF A VAGUE, UNCERTAIN AND UNENFORCEABLE ORDER

An order granting injunctive relief must "describe in reasonable detail … the act or acts restrained or required." Fed.R.Civ.P. 65(d)(1)(C). Because a party is entitled to receive fair and precisely drawn notice of what an injunction prohibits or requires, blanket injunctions to "obey the law" are disfavored. *Ruff v. County of Kings*, No. CV-F-05-631 OWW/GSA, 2009 WL 5111766, at *18 (E.D. Cal. Dec. 18, 2009) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1226 (C.D. Cal. 2007)).

"Courts have declined injunctive relief where the injunction sought is of such an indeterminate character that an enjoined party cannot readily determine what conduct is being prohibited." *Brady v. United of Omaha Life Ins. Co.*, 902 F.Supp.2d 1274, 1284 (N.D. Cal. 2012) (citing *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."). Plaintiff's requested relief is so vague that it is legally infirm. *See Van Dyke v. Regents of University of California*, 815 F. Supp. 1341, 1345-46 (C.D. Cal. 1993) (granting motion to dismiss complaint seeking injunction preventing defendants from interfering with plaintiffs' religion as vague, overbroad and impossible to enforce). "The requirement of specificity in injunction orders performs a second important function. Unless

the trial court carefully frames its orders of injunctive relief, informed and intelligent appellate review is greatly complicated, if not made impossible." *N.L.R.B. v Express Publishing Co.*, 312 U.S. 426, 435-36, 61 S.Ct. 693, 85 L.Ed. 930 (1941).

Here, Plaintiff's Prayer for Relief requests preliminary and permanent injunctions "ordering Defendants to cease surveilling, detaining, and otherwise targeting Plaintiff; restraining Defendants from taking any future adverse action against her based on protected expression, association, or religious exercise; and generally restoring Plaintiff to the status quo ante." Complaint, Prayer for Relief. The requested relief is sweeping in nature and too vague. For example, it seeks to enjoin the Federal Defendants from ever surveilling, detaining or otherwise targeting Plaintiff regardless of the justification. The injunctive relief also would require the Federal Defendants to determine which of their future unspecified actions might infringe on Plaintiff's "protected expression, association, or religious exercise." As noted above, Courts have declined to grant such relief where the injunction sought is of such an indeterminate character that an enjoined party cannot readily determine what conduct is being prohibited. Because this is exactly the type of "follow the law" relief sought by Plaintiff, the Court should deny the motion for preliminary injunction.

## VII.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for preliminary injunction.

DATED:       September 9, 2019              Respectfully submitted,

                                            ROBERT S. BREWER, JR.
                                            United States Attorney

                                            *s/ Ernest Cordero, Jr.*
                                            ERNEST CORDERO, JR.
                                            Assistant United States Attorney
                                            MICHAEL A. GARABED
                                            Assistant United States Attorney