

FILED
NOV 22 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAJI DOUSA,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"), et al,<br><br>Defendants. | Case No.: 19cv1255-LAB(KSC)<br><br>**ORDER RE IN CAMERA REVIEW**<br>**[Doc. Nos. 33, 42.]** |

In an Order filed on October 4, 2019, plaintiff's request for expedited discovery was granted to allow limited disclosure of documents to support her Motion for Preliminary Injunction, which is currently pending before the District Court. [Doc. No. 42.] Defendants then produced to plaintiff a privilege log, a supporting declaration, and responsive documents that include redactions based on claims of privilege and privacy. In addition, as required by the Court's Order of October 4, 2019, defendants submitted their privilege log, supporting declaration, and an unredacted copy of the responsive documents for an *in camera* review. [Doc. No. 42, at p. 17.]

Plaintiff filed a Response Re: Documents Submitted for *In Camera* Review arguing that the Court should reject defendants' privilege claims, because some of the redacted documents are central to plaintiff's case, defendants' privilege claims are

1

unfounded and unsupported, and defendants' confidentiality and privacy concerns can be addressed by an appropriate protective order. [Doc. No. 48, at pp. 1-7.]

## *Background*

Plaintiff's Complaint includes causes of action against the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), the U.S. Customs and Border Protection ("CBP"), and others for: (1) retaliation in violation of the First Amendment; (2) violation of the First Amendment's Free Exercise Clause; and (3) violation of the Religious Freedom Restoration Act (RFRA). [Doc. No. 1, at pp. 35-41.] Plaintiff generally alleges that she is a U.S. citizen and a senior pastor in a Christian church located in New York City. [Doc. No. 1, at pp. 8.] She ministers to, and advocates for, immigrant communities, provides pastoral care to migrants in the United States and Mexico, and leads events to oppose U.S. immigration policy. [Doc. No. 33, at p. 3; Doc. No. 1, at pp. 5-6, 10.] In 2018, plaintiff helped to organize a mobile clinic known as the "Sanctuary Caravan." The Sanctuary Caravan is composed of faith leaders, congregants, and humanitarian workers who provide pastoral care south of the U.S. border to several hundred migrants seeking asylum in the United States. [Doc. No. 1, at p. 11.] The Sanctuary Caravan provides a wide variety of pastoral services to migrants and asylum seekers, who often seek sanctuary in a church, because it is "a recognized place of safety, comfort, counseling, and religious guidance." [Doc. No. 1, a p. 14.] As an example of a pastoral service she provided to migrants, plaintiff represents that she "officiated over Christian marriage ceremonies for migrants who had never before been able to have a church-blessed wedding." [Doc. No. 1, at p. 6.] The Sanctuary Caravan partners with an organization known as Al Otro Lado, which provides legal services to migrants on both sides of the U.S. border. [Doc. No. 1, at p. 15.]

Based on her own experience, news stories that surfaced following her January 2, 2019 detention, and information she has obtained from other sources about similar targeting of journalists, immigration attorneys, and other advocates, plaintiff contends her rights under the First Amendment and RFRA have been violated. Plaintiff believes she

has been targeted for "heightened surveillance" and screening at the border in retaliation for taking part in protected speech and religious activities that are protected by the First Amendment. In addition, plaintiff believes that defendants' policies and practices have severely burdened and impeded the exercise of her religion in violation of RCRA. In her Motion for Preliminary Injunction, she seeks an order requiring defendants to restore her SENTRI status. She also seeks an order prohibiting defendants from targeting her for any adverse treatment in the future because of her protected speech and religious activities in support of immigrant communities. [Doc. No. 25-1, at pp. 34-35.]

## *Discussion*

### A. *Application of the Official Information or Law Enforcement Privilege.*

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 926 F.2d 1027, 1033 (9th Cir. 1990). This qualified privilege is sometimes referred to by other names, such as the "law enforcement privilege" (*In re U.S. Dept. of Homeland Security*, 459 F.3d 565, 568 (5th Cir. 2006)) or the "ongoing investigation privilege" (*Youngblood v. Gates*, 112 F.R.D. 342, 345 (C.D. Cal. 1985)). "To determine whether *the* information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Sanchez*, 936 F.2d at pp. 1033-1034.

In civil rights cases, the balancing test "is moderately pre-weighted in favor of disclosure," but "the interests of law enforcement . . . and how much weight to ascribe to them can vary with both the kind of information in question and the situation in which it is being sought." *Kelly v. City of San Jose*, 114 F.R.D. 653, 661-662 (N.D. Cal. 1987). "For example, law enforcement usually will have a much greater interest in preserving the confidentiality of names of citizen informants in on-going criminal investigations than in keeping secret the factual information provided by percipient witnesses to events that are long since past and about which there will be no prosecution or internal affairs follow-up." *Id.* at 662.

Here, defendants' Privilege Log indicates documents or portions of documents have been redacted and withheld from plaintiff because they are "Law Enforcement Sensitive." The Court construes defendants' "Law Enforcement Sensitive" redactions to be assertions of the official information privilege or the law enforcement privilege. As the party asserting the privilege and seeking its benefits, defendants have the burden of establishing that the privilege applies. *Kelly*, 114 F.R.D. at 662, 664, 669. To satisfy this burden, the government must "offer competent evidence about how the specific requested disclosure would harm governmental interests. If the government makes the equivalent of a *prima facie* showing of harm, courts must conduct a situation specific analysis of the factors made relevant by the request in issue and the objection to it." *Id.* at 663, 669. Competent evidence should include a declaration "from a responsible official within the agency who has personal knowledge" explaining "*what interests* would be harmed, *how* disclosure under a protective order would cause the harm, and *how* much harm there would be. . . ." *Id.* at 669 (emphasis in original).

The documents submitted for *in camera* review also include a Declaration by CBP's Acting Deputy Patrol Agent. The Declaration represents that all documents submitted for *in camera* review "have been maintained by CBP as part of its efforts to investigate, and gather information on, potential unlawful activities involving, or related to, caravans of individuals seeking to enter the United States at or near the San Ysidro Port of Entry ("SYPOE") in late 2018 and early 2019." [Defs.' Exh. 7, Lopez Decl., at p. 2.] According to the Declaration, release of these documents, "especially the information redacted from the documents," would make it more difficult for CBP to "pursue leads" and continue its investigative efforts "about potentially unlawful activities with respect to the groups and individuals identified." *Id.* The Court finds that these generalized claims of harm are insufficient to satisfy defendants' burden to establish that all the redacted information should be shielded from disclosure. Based on the Declaration, it is unclear how revealing the unredacted portions of the investigative documents would make it more difficult for CBP to pursue leads. The Declaration also does not address whether "a

4

carefully tailored protective order" could be entered to protect defendants' interest in maintaining the confidentiality of these investigative materials. *Kelly*, 114 F.R.D. at 666, 672.

### B. *In Camera Review of Documents.*

#### 1. *Internal File Identification Codes, E-Mail Addresses, and Telephone Numbers.*

Information redacted from the documents produced to plaintiff includes internal file identification codes. [Doc. Nos. CBP-0001 through CBP 00034.] These identification codes are not relevant to the parties' claims or defenses, so the Court finds they need not be disclosed and can remain redacted. Information redacted from these documents also includes internal e-mail addresses and telephone numbers for CBP officers. Since CBP and its officers are represented by counsel, direct contact information for these officers is not relevant to the parties' claims or defenses, so it would not be appropriate or necessary to disclose this information. [Doc. Nos. CBP-0001 through CBP 00034.] Therefore, the Court finds that this information can remain redacted.

#### 2. *Investigative Materials.*

The remaining redactions are comprised of investigative materials (*i.e,* documents and information, including pictures) that were collected in connection with CBP's "law enforcement information gathering obligations." [Defs.' Privilege Log, at pp. 1-2, Doc. Nos. CBP-0001 through CBP 00034; CBP00035 through CBP-00044.] Some of these investigative documents may reveal investigative techniques or tactics. However, the Court's review of the unredacted version of these documents did not reveal any techniques or tactics that are particularly sensitive or confidential, as they are not unlike those traditionally used by law enforcement to obtain information. For example, one of the documents is a one-page summary of an interview with a migrant who mentioned plaintiff's name, and the summary of the interview includes related information that was obtained from a website available to the public. [Doc. No. CBP-00022.] Other

investigative documents include general data collection materials, postings on social media, and pictures of plaintiff and other parties that were collected from social media. [Doc. Nos. CBP-00001 through CBP-00034.] The relevance of these documents to the allegations in the Complaint is obvious.

The redacted documents include a series of color-coded pictures of plaintiff and others who were allegedly involved with migrant caravans during 2019. [Doc. Nos. CBP-00035-00044.] This series of color-coded pictures appears to be similar to or the same as the set of color-coded pictures that were attached as an exhibit to plaintiff's request for expedited discovery. According to the Complaint and a Declaration by plaintiff's counsel submitted with plaintiff's request for expedited discovery, these color-coded pictures were released to the press by a whistleblower and then made available to plaintiff by the press. However, the pictures in the version made available to plaintiff by the press are blurred to prevent identification of third parties, because the press did not have permission to publish their information; only plaintiff's picture is not blurred out. [Doc. No. 33-7, at pp. 3-4; Doc. No. 33-1, at pp. 1-6 (Exhibit D); Doc. No. 1, at pp. 18-21, *et seq.*] Based on the allegations in the Complaint and the representations made along with plaintiff's request for expedited discovery, plaintiff has established the relevance and importance of the above-described set of color-coded pictures to her claims against defendants. In addition, without more, defendants cannot expect to maintain complete confidentiality of documents that were leaked or made available to the press and that may have already been made available to others, including members of the public. *See, e.g., Kelly*, 114 F.R.D. at 670 (stating that a declaration submitted in support of a claim based on the official information privilege should include "an affirmation" that the government agency claiming the privilege has "in fact" maintained the confidentiality of the materials in issue).

The final items included on defendants' Privilege Log are video clips from the SYPOE dated January 2, 2019. [Defs.' Exh. 1, Priv. Log, at 2, CBP-Video-001, 002, 003, and 004.] In the Complaint, plaintiff represents that she went to the SYPOE on

January 2, 2019 to return to San Diego. After a CBP official reviewed her global entry card, plaintiff was directed to a waiting room for secondary screening where she was questioned about her work in Tijuana with the migrant caravan. [Doc. No. 1, at pp. 16-17.] Defendants' Privilege Log indicates that the video clips show plaintiff for a portion of the time she was present at the SYPOE on January 2, 2019. The Court was unable to review the video clips even though they were provided to the Court by defendants on a DVD, because the Court does not have the software necessary to access the video clips. However, it is not necessary for the Court to review theses video clips, because defendants' Privilege Log agrees to make them available to plaintiff subject to a protective order. Accordingly, the Court will direct the parties to draft a suitable protective order based on the Model Protective Order that is available to the parties on the Court's website so that plaintiff can review these video clips if she chooses to do so, and so that a procedure is in place to govern the exchange of any other confidential information between the parties during the course of this litigation. In drafting a proposed protective order, the parties must refer to this Court's Chambers Rules, Section XI, Stipulated Protective Orders, which sets forth two provisions that must be included in the proposed protective order and the procedures for submitting proposed protective orders.

In sum, there is nothing to indicate the internal e-mail addresses and telephone numbers of CBP officers and any internal file identification codes included in the documents submitted for *in camera* review are relevant to the parties' claims or defenses. As a result, defendants may maintain the confidentiality of this information with appropriate redactions. However, the Court finds that the remaining investigative information redacted from the documents submitted for *in camera* review is relevant to the allegations in the Complaint, and defendants have not met their burden of establishing that disclosure of this information subject to "a carefully tailored protective order" (*Kelly*, 114 F.R.D. at 672) would harm governmental interests in maintaining the confidentiality of this information.

7

### *3.* *Freedom of Information Act Documents*.

Defendants also submitted for *in camera* review a set of CBP documents redacted based on the Freedom of Information Act (FOIA). [Doc. Nos. FOIA -0001 through FOIA-00034.] Except that they are more heavily redacted based on various provides of the FOIA, these documents are the same as the investigative documents produced as Document Nos. CBP-00001 through CBP-00034 on defendants' privilege log. Documents exempt from disclosure to the public under FOIA are not automatically privileged in civil litigation. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006). In other words, documents exempt from disclosure to members of the public under FOIA may still be discoverable in civil litigation. *Id.* Accordingly, it is not necessary for the Court to conduct a separate review of these FOIA documents, because it would not change the outcome of the Court's *in camera* review. These redacted FOIA documents are, of course, not subject to a protective order.

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that:

(1) Defendants are not required to reveal internal file identification codes or the internal e-mail addresses and telephone numbers of CBP officers, so this information can remain redacted from the documents submitted for *in camera* review. [CBP-00001 through CBP-00034.]

(2) As outlined more fully above, defendants shall, ***within five (5) days of the date this order is entered***, produce to plaintiff's counsel a copy of the documents submitted for *in camera* review with redactions of investigative materials removed. [CBP-00001 through CBP-00044.] Disclosure of these documents shall be subject to the following Protective Order: All unredacted investigative materials disclosed from the documents submitted for *in camera* review shall be treated as ***confidential for counsel's eyes only*** and shall only be viewed by plaintiff's counsel and by an independent expert retained by plaintiff with written notice to defendant's counsel at least ten (10) days in advance and with approval by defendants' counsel. These unredacted investigative

materials shall only be used in connection with this litigation and for no other purpose. Plaintiff's counsel may only retain one copy of these documents, and this copy must be returned to defendants' counsel at the end of this case, or destroyed at defense counsel's direction. If plaintiff's counsel wishes to attach any of this investigative information to a document for submission to the Court, plaintiff's counsel must request that the information be filed under seal.

(3) ***Within ten (10) days of the date this Order is entered***, counsel shall jointly submit a proposed stipulated protective order governing the exchange of confidential information between the parties to this case that is based on the Model Protective Order available on the Court's website.

IT IS SO ORDERED.

Dated: November 22, 2019

Hon. Karen S. Crawford
United States Magistrate Judge