Oscar Ramallo (Bar No. 241487)
Oscar.Ramallo@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Attorney for Plaintiff*
*Kaji Dousa*

[Additional counsel listed on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAJI DOUSA,<br><br>                    Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); KEVIN K. MCALEENAN, Acting Secretary of DHS; MATTHEW T. ALBENCE, Acting Director of ICE; MARK A. MORGAN, Acting Commissioner of CBP; AND PETER FLORES,  Director of Field Operations for CBP, San Diego,<br><br>                    Defendants. | Case No. 19-cv-01255<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Hearing Date: April 6, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. Todd W. Robinson |

# TABLE OF CONTENTS

Page

FACTUAL BACKGROUND .......................................................................... 1

    A.    Pastor Dousa Moves for a Preliminary Injunction and Expedited Discovery ........................................................... 2

    B.    The Court Orders Defendants to Produce All Documents Relating to the Revocation of Pastor Dousa's Trusted Traveler Status ....................................................... 3

    C.    The District Court Denies Pastor Dousa's Motion for a Preliminary Injunction, Relying on the Oliveri Declaration ............... 5

    D.    After Months of Delay, Defendants Belatedly Produce Documents Indicating that Mr. Oliveri Himself "Revoked" Pastor Dousa's Trusted Traveler Status, Contrary to His Declaration ........................................................ 5

    E.    Oliveri Admits at Deposition That His Declaration Is Inaccurate ........ 7

    F.    The Office of Inspector General Finds That Mr. Oliveri Was a Key Figure in the Operation Secure Line Targeting List ................... 8

LEGAL ARGUMENT ............................................................................. 11

I.    The Court Has Multiple Sources of Authority to Impose Sanctions ........... 11

II.    The Court Should Impose Appropriate Sanctions for Defendants' Misconduct Under Rules 26(g)(3) and 37 .................................... 12

    A.    Defendants violated their discovery obligations under Rule 26(g)(3). ........................................................ 12

    B.    Defendants further violated their discovery obligations under Rule 37 ............................................................. 15

III.    The Court Should Impose Appropriate Sanctions for Defendants' Misconduct Under Its Inherent Authority .................................. 17

CONCLUSION .................................................................................. 18

CERTIFICATE OF SERVICE ................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Aloe Vera of Am., Inc. v. United States*,
　　376 F.3d 960 (9th Cir. 2004) ............................................................... 18

*Carson Cheng v. AIM Sports, Inc.*,
　　No. 10-3814, 2011 WL 13175663 (C.D. Cal. Aug. 23, 2011) ........................... 17

*Chambers v. NASCO, Inc.*,
　　501 U.S. 32 (1991) ................................................................... 11, 17

*Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*,
　　101 F. Supp. 3d 856 (C.D. Cal. 2015) ......................................................... 11

*Est. of Nunez by & Through Nunez v. Corr. Physicians Med. Grp., Inc.*,
　　No. 16-1412, 2019 WL 1024397 (S.D. Cal. Mar. 4, 2019) ......................... 12, 17

*Evon v. Law Offices of Sidney Mickell*,
　　688 F.3d 1015 (9th Cir. 2012) ................................................................ 12, 17

*Goodyear Tire & Rubber Co. v. Haeger*,
　　137 S. Ct. 1178 (2017) ......................................................................... 12

*Guifu Li v. A Perfect Day Franchise, Inc.*,
　　281 F.R.D. 373 (N.D. Cal. 2012) ............................................................ 15, 17

*Handloser v. HCL Am., Inc.*,
　　No. 19-01242, 2020 WL 4923971 (N.D. Cal. Aug. 21, 2020) ........................ 12

*Klund v. High Tech. Sols., Inc.*,
　　No. 05-565, 2006 WL 549385 (S.D. Cal. Feb. 27, 2006) ................................. 18

*Lewis v. Ryan*,
　　261 F.R.D. 513 (S.D. Cal. 2009) .............................................................. 18

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
　　No. 16-06370, 2020 WL 2838806 (N.D. Cal. June 1, 2020) ........................ 12, 14

*Perkins v. City of Modesto*,
　　No. 19-00126, 2020 WL 1333109 (E.D. Cal. Mar. 23, 2020) ........................ 14

*Play Visions, Inc. v. Dollar Tree Stores, Inc.*,
   No. 09-1769, 2011 WL 2292326 (W.D. Wash. June 8, 2011)..........................14

*Playboy Enterprises, Inc. v. Welles*,
   60 F. Supp. 2d 1050 (S.D. Cal. 1999) ...................................................................3

*Pumphrey v. K.W. Thompson Tool Company*,
   62 F.3d 1128 (9th Cir. 1995) ..............................................................................16

*R & R Sails Inc. v. Ins. Co. of State of PA*,
   251 F.R.D. 520 (S.D. Cal. 2008) .........................................................................14

*Silva v. TEKsystems, Inc.*,
   No. 12-CV-05347, 2013 WL 3939500 (N.D. Cal. July 25, 2013)......................15

*Smith v. Simmons*,
   No. 05-01187, 2009 WL 1312930 (E.D. Cal. May 12, 2009) ....................12, 17

*Tourgeman v. Collins Fin. Servs., Inc.*,
   No. 08-1392, 2012 WL 28289, at *2 (S.D. Cal. Jan. 5, 2012).........................15

*United States v. Sumitomo Marine & Fire Ins. Co.*,
   617 F.2d 1365 (9th Cir. 1980)............................................................................17

*Zubulake v. UBS Warburg LLC*,
   217 F.R.D. 309 (S.D.N.Y. 2003).........................................................................3

## **Rules**

Fed. R. Civ. P. 26(g)(1)(A).................................................................................12

Fed. R. Civ. P. 26(g)(1)(B).................................................................................11

Fed. R. Civ. P. 26(g)(3) .........................................................................11, 12, 13, 14

Fed. R. Civ. P. 37.........................................................................................15, 16

Fed. R. Civ. P. 37(b)(2)(A)...................................................................11, 15, 16

Fed R. Civ. P. 37(b)(2)(C)...................................................................................15

## **Other Authorities**

E. Shanahan and Z. Kanno-Youngs, *Homeland Security Dept. Admits Making False Statements in Fight with N.Y.*, N.Y. Times (July 23, 2020)......................18

## **Exhibits**

Exhibit 1:  Email from Michael A. Garabed, dated Dec. 19, 2019

Exhibit 2:  Plaintiff's First Set of Requests for Production of Documents

Exhibit 3:  Federal Defendants' First Request for Inspection

Exhibit 4:  Emails (CBP_0000826-27)

Exhibit 5:  Emails (CBP_0012265-66)

Exhibit 6:  Excerpts of Transcript of Deposition of Saro Oliveri

Exhibit 7:  Email (CBP_0013538)

Plaintiff Kaji Dousa respectfully moves for an order imposing sanctions on Defendants for violating Magistrate Judge Crawford's order regarding expedited discovery (Dkt. 42), for submitting a false or at best misleading sworn declaration to the Court, and for failing to correct the record upon learning that the declaration likely misled the Court.

## FACTUAL BACKGROUND

This case arises from a wide-ranging government operation targeting Pastor Dousa and other individuals who advocated for and provided assistance to migrants seeking refuge in the United States in late 2018. Pastor Dousa first learned about the operation in March 2019, when the media published government documents leaked by a whistleblower at U.S. Immigration and Customs Enforcement ("ICE"). Those documents included a targeting list entitled "Suspected Organizers, Coordinators, Instigators and Media," which contained photographs and information about journalists, immigration attorneys, and immigrants' rights advocates. Pastor Dousa's photograph appears on the targeting list with a yellow "X" over her face, as well as the notation "Disposition: SENTRI Revoked." SENTRI is one of the Trusted Traveler programs administered by U.S. Customs and Border Protection ("CBP") that provides expedited border-crossing privileges to individuals enrolled in the program. A key dispute in this case has been whether the "Revoked" notation on the targeting list is accurate. As detailed below, Defendants repeatedly claimed, including in a sworn declaration from a CBP official, that Pastor Dousa's Trusted Traveler status was never suspended or revoked. The Court relied upon that claim in denying a preliminary injunction. But it is flatly contradicted by documents that Defendants previously failed to produce in violation of the Court's expedited discovery order directing them to do so at the preliminary injunction phase. These documents, which include emails sent and received by Defendants' own declarant, were produced only long after the fact.

1

### A.   Pastor Dousa Moves for a Preliminary Injunction and Expedited Discovery

Pastor Dousa filed this suit in July 2019, alleging that Defendants unlawfully targeted her for adverse treatment—including revocation of her Trusted Traveler status—because she ministers to migrants and advocates for their rights.  Pastor Dousa asserted that Defendants' actions violated both the First Amendment and the Religious Freedom Restoration Act.  She moved for a preliminary injunction shortly after filing her complaint, seeking an order requiring Defendants to restore her Trusted Traveler status and prohibiting Defendants from targeting her for adverse treatment in the future based on her protected activity.  Dkt. 1, 25.

Upon filing her preliminary injunction motion, Pastor Dousa's counsel contacted Defendants' counsel to discuss Pastor Dousa's request for limited expedited discovery in connection with her motion.  *See* Dkt. 33-7 ¶ 5.  The parties were unable to reach agreement.  *Id.* ¶¶ 5–10.  In an attempt to avoid expedited discovery, Defendants' counsel provided a sworn declaration signed by Saro Oliveri, CBP's Branch Chief at the Port of Otay Mesa and the CBP official responsible for overseeing the Trusted Traveler Enrollment Center at that location.  *See* Dkt. 33-1 ¶ 1.  In the declaration, Mr. Oliveri stated that he retrieved information about Pastor Dousa from the Global Enrollment System, a database maintained by CBP.  *Id.* ¶¶ 2, 4–6.  The record he purportedly retrieved was heavily redacted.  According to Mr. Oliveri, however, the record "contain[ed] information showing that Kaji Dousa's Global Entry card was issued on December 14, 2016 and **has never been revoked or suspended**."  *Id.* ¶ 4 (emphasis added).

In Pastor Dousa's view, neither the Oliveri declaration nor the accompanying records resolved the factual dispute over her Trusted Traveler status.  *See* Dkt. 33 at 4 n.2.  Nor did they explain why the leaked government documents described her status as "Revoked."  *Id.*  Unable to resolve their dispute, the parties filed a joint

motion asking the Magistrate Judge to rule on Pastor Dousa's request for expedited discovery relating to her motion for a preliminary injunction. Specifically, Pastor Dousa sought an order authorizing her to serve Defendants with three specific document requests on an expedited basis. One of those requests sought "[a]ny and all documents within the possession, custody, or control of DHS, ICE, or CBP relating to the revocation of Kaji Dousa's Secure Electronic Network of Travelers Rapid Inspection ('SENTRI') pass." Dkt. 33-8 at 7. The requests defined "documents" to include "electronically stored information," *i.e.*, emails. *Id.* at 4.[1] In the motion, Pastor Dousa explained that she only sought documents dating back to January 1, 2018, and only documents that specifically mentioned her by name. *Id.* at 7-8.

Defendants opposed any expedited discovery, arguing that discovery was unnecessary and unduly burdensome. They argued that Pastor Dousa's requests imposed "a colossal burden," noting "the size and number of different components contained within DHS." Dkt. 33 at 16-17. Defendants also pointed to Mr. Oliveri's declaration as a reason to deny expedited discovery. *Id.* at 18 (citing Dkt. 33-1). According to Defendants, Mr. Oliveri had conducted a "search" that "turned up no evidence that Plaintiff ever had a SENTRI pass," *id.* at 12 n.8, which "negat[ed] the central allegation in [Pastor Dousa's] complaint," *id.* at 18.

## B.    The Court Orders Defendants to Produce All Documents Relating to the Revocation of Pastor Dousa's Trusted Traveler Status

On October 4, 2019, Magistrate Judge Crawford granted Pastor Dousa's request for expedited discovery, concluding that the proposed document requests

---

[1] Emails have long been considered "documents" under Federal Rule of Civil Procedure 34. *See, e.g.*, *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999) (plaintiff's request for "documents" encompassed emails); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316–17 (S.D.N.Y. 2003) (same).

were "reasonable," "narrowly tailored," and likely to be "helpful for the District Court" in evaluating her preliminary injunction motion. Dkt. 42 at 10. The order "deemed [Defendants] to have been served" with Pastor Dousa's three document requests—including the request seeking "[a]ny and all documents … relating to the revocation of Kaji Dousa's [SENTRI] pass." *Id.* at 16–17. Magistrate Judge Crawford notably rejected Defendants' argument that responding to the discovery requests would be overly burdensome. *Id.* at 12–13. At Pastor Dousa's request, the Court stayed further briefing on her preliminary injunction motion until Defendants' production was complete, and directed Pastor Dousa to "notify the Court no later than the first business day after she receives confirmation from Defendants that she has received all documents responsive to Magistrate Judge Crawford's Order on Expedited Discovery." Dkt. 44 at 1.

Defendants produced 53 pages of documents in response to Pastor Dousa's requests, many of them heavily redacted based on claims of privilege. The production consisted primarily of the leaked targeting list, a couple of database printouts, and a few investigative reports prepared by CBP officers; it did not include any emails. After Magistrate Judge Crawford overruled nearly all of Defendants' privilege claims, *see* Dkt. 49, Defendants ultimately produced unredacted versions of those documents and a handful of others. On December 19, 2019, Defendants' counsel emailed Pastor Dousa's counsel stating: "It is my understanding that this completes our production in response to Magistrate Crawford's order re expedited discovery." Ex. 1. The following day, Pastor Dousa filed a notice seeking to resume briefing on her preliminary injunction motion. *See* Dkt. 53. In the notice, Pastor Dousa explained that she continued to have concerns about the completeness of Defendants' production in response to the expedited discovery order, including "the adequacy of CBP's searches." *Id.* at 3. But in light of the urgent need to resolve her preliminary injunction motion, Pastor Dousa

agreed to resume briefing based on Defendants' representation that their production was "complete." *Id.*

### C. The District Court Denies Pastor Dousa's Motion for a Preliminary Injunction, Relying on the Oliveri Declaration

In January 2020, this Court issued an order denying Pastor Dousa's motion for a preliminary injunction and largely denying Defendants' motion to dismiss. Dkt. 61 at 21. Although the Court found that "each of Dousa's three substantive claims are plausible," in denying her request for preliminary relief it concluded that Pastor Dousa could not "at this stage, show a likelihood of success on the merits" on her free exercise, RFRA, and First Amendment retaliation claims. *Id.* at 11, 21.

In analyzing each of those claims, the Court relied significantly on the sworn statement in Mr. Oliveri's declaration that Defendants had never revoked or suspended Pastor Dousa's Trusted Traveler status. *See id.* at 15–16, 19. The Court was "clear" that "**if the Government had revoked Dousa's SENTRI card** (and Dousa could show that the revocation was the result of her engaging in protected activity, **the Court would have no problem finding a substantial burden**" under the Free Exercise Clause and RFRA, and thus the required likelihood of success on the merits for a preliminary injunction. *Id.* at 15–16 (emphases added). Similarly, the Court found that "had [Defendants] revoked her SENTRI card," it would have amounted to an "adverse government action that would chill a person of ordinary firmness from engaging in protected activity," demonstrating a likelihood of success on Pastor Dousa's retaliation claim. *Id.* at 19.

### D. After Months of Delay, Defendants Belatedly Produce Documents Indicating that Mr. Oliveri Himself "Revoked" Pastor Dousa's Trusted Traveler Status, Contrary to His Declaration

After the Court's decision, the parties commenced full discovery. In March 2020, Pastor Dousa served requests for production seeking, among other things, all

documents "relating to Kaji Dousa" and all documents "relating to the actual or potential suspension or cancellation of Kaji Dousa's status or privileges under any DHS Trusted Traveler program." Ex. 2 at 8. Defendants did not produce *any* documents responsive to Pastor Dousa's requests until Magistrate Judge Crawford intervened nine months later. For their part, Defendants served requests for production seeking 46 categories of "documents," including emails. Ex. 3 at 3, 4–8. Pastor Dousa produced more than a thousand pages of documents, including hundreds of emails, in August 2020.

In January 2021, nearly a full year after the Court relied on the Oliveri declaration to deny Pastor Dousa injunctive relief, Defendants produced documents demonstrating that the Oliveri declaration is, at best, highly misleading. These documents indicate that Pastor Dousa's Trusted Traveler status was in fact "suspended" during the caravan investigation—and worse, that Mr. Oliveri, who stated in a signed declaration to the Court that Pastor Dousa's status had "never been revoked or suspended," was indisputably made aware of the suspension that he later denied. In an email dated December 6, 2018, with the subject line "SENTRI poss caravan organizer," a CBP officer at the Trusted Traveler Enrollment Center, Nicolas Gonzales, copied Mr. Oliveri on an email describing the status of Pastor Dousa's membership in the Trusted Traveler programs, stating: "**Today I suspended her Global access as well.**" Ex. 4 (emphasis added).[2]

This email chain includes Mr. Oliveri, discusses Pastor Dousa by name, and specifically references both SENTRI and the Trusted Traveler program ("TTP"). *Id.* And the email from Mr. Gonzales clearly states, contrary to Mr. Oliveri's declaration, that Pastor Dousa's Trusted Traveler status was in fact suspended. Had Mr. Oliveri conducted *any* search for relevant documents before submitting his

---

[2] The government has agreed that the redacted versions of these emails may be filed publicly.

declaration, he unquestionably would have found this email chain. Defendants, however, inexplicably failed to produce these emails during expedited discovery at the preliminary injunction phase, despite Magistrate Judge Crawford's October 4, 2019 order.

In April 2021, Defendants produced yet another document directly refuting the Oliveri declaration—this one authored by Mr. Oliveri himself. In an email dated December 13, 2018, a key participant in the caravan investigation, CBP's Miguel Haro, forwarded allegations about Pastor Dousa to Mr. Oliveri and wrote, "Can you forward to Nico [Gonzales]? Maybe see what you and him think of this for this TTP participant." Ex. 5. Mr. Oliveri responded later the same day, stating: "**We revoked her.**" *Id.* (emphasis added). In other words, despite attesting in a sworn declaration to this Court that Pastor Dousa's Trusted Traveler status had "never been revoked or suspended," Mr. Oliveri himself wrote in an email to a CBP co-worker, just eight months before signing his declaration, that he had personally participated in revoking her Trusted Traveler status.

Again, this email chain includes Mr. Oliveri, discusses Pastor Dousa by name, and specifically references the Trusted Traveler program. Any reasonable search would have uncovered the emails. But again, Defendants failed to produce these indisputably responsive emails during expedited discovery earlier in the case.

### E.      Oliveri Admits at Deposition That His Declaration Is Inaccurate

Mr. Oliveri's deposition testimony repeatedly confirmed what these documents irrefutably show: Notwithstanding the emails and targeting list clearly indicating the contrary—including emails Mr. Oliveri wrote and received—Mr. Oliveri's sworn declaration improperly asserted that Pastor Dousa's Trusted Traveler status was never suspended or revoked. *See, e.g.*, Ex. 6 at 110–11, 114, 122–23, 165, 246–47. Mr. Oliveri testified that at the instruction of Defendants'

counsel, he looked only to two government databases to pull records on Pastor Dousa in connection with the preparation of his declaration. *See id.* at 97–99, 116–17, 173. That is, Mr. Oliveri conducted no other search for documents or records related to the revocation of Pastor Dousa's Trusted Traveler status—not even a simple search for Pastor Dousa's name in his own email account.

The on-the-record statements of Mr. Oliveri and Defendants' counsel at the deposition further call into question the declaration. *See id.* at 73–80. Mr. Oliveri testified that he personally entered a notation about Pastor Dousa's Trusted Traveler status in the Global Enrollment System ("GES")—one of the two databases from which he drew records for the declaration—and that he "of course" would have included mention of this GES notation in his declaration had he entered the notation before the date of the declaration. *Id.* at 73–74; *see also id.* at 71–74, 77, 79, 207–09, 218, 221, 242–44. Yet Mr. Oliveri made this notation on July 25, 2019, *id.* at 242; Dkt. 55-13 at 48, three weeks before signing the declaration, which makes no mention of the GES notation he had added. Ex. 6 at 54. At no point since Mr. Oliveri's deposition have Defendants sought to correct his declaration.

### F.   The Office of Inspector General Finds That Mr. Oliveri Was a Key Figure in the Operation Secure Line Targeting List

In the months after Mr. Oliveri's deposition, Pastor Dousa's counsel obtained additional information confirming his key role in the events giving rise to this case, and further reason to doubt that the representations Defendants made to the Court in opposing Pastor Dousa's preliminary injunction were accurate. Before Pastor Dousa filed her preliminary injunction motion, DHS's Office of Inspector General ("OIG") had opened an investigation into Operation Secure Line. *See* Letter from Jennifer L. Costello, Acting Inspector General, to Sen. Tom Udall (July 15, 2019) (stating that "a multidisciplinary team of [OIG] criminal investigators, program analysts, and attorneys is conducting an investigation of this list and related

issues").[3]  In September 2021, OIG published a report detailing the findings of its investigation.   *See* Office of Inspector General, OIG-21-62, *CBP Targeted Americans Associated with the 2018-2019 Migrant Caravan* (Sept. 20, 2021) [hereinafter OIG Report].

A key section of the report addresses OIG's finding that "CBP inappropriately asked Mexico to deny entry to at least 14 U.S. citizens affiliated with the migrant caravan." *Id.* at 16–20.  The report explains that in December 2018, a CBP official in San Diego's Foreign Operations Branch (identified in the report only as FOB Official 1) "emailed an unencrypted list of 24 migrant caravan 'organizers/instigators,' including 14 Americans, to a Mexican immigration official." *Id.* at 17.  The email "explicitly requested that Mexico prevent the individuals from entering Mexico and instead return them to the United States." *Id.* Discovery in this case has revealed that FOB Official 1 is, in fact, Mr. Oliveri, and that Pastor Dousa is one of the U.S. citizens listed in his email to the Mexican government.  *See* Ex. 7; Ex. 6 at 136–51.

The OIG report unequivocally concludes that Mr. Oliveri's email was "inappropriate[]" and unfounded:  "CBP could not articulate any genuine basis for sending this request and in fact later admitted that the reasons provided to Mexico were not true."  OIG Report at 16; *see also id.* at 17 (noting that other CBP officials told OIG that "the request was neither typical nor appropriate").  As support for that conclusion, the report explains that during his interview with OIG, Mr. Oliveri "could not identify any specific concerns" about the individuals listed in his email and "did not think they were involved in illegal activity." *Id.* at 18.  Although his email told the Mexican government that the listed individuals likely "lack[ed] the proper documentation to be in Mexico," Mr. Oliveri admitted to OIG that CBP had

---

[3] https://drive.google.com/file/d/1oY8q3RtC4DxvvtBkW_UMyF1J6qJa49O2/view.

"no knowledge of whether they did or didn't have documentation" when he sent the email. *Id.* at 17, 19.  And although Mr. Oliveri's email told the Mexican government that CBP "wishe[d] to interview" the listed individuals, OIG concluded that that statement "also does not seem to be supported by the facts." *Id.* at 19.

Mr. Oliveri's deposition testimony confirms the groundless nature of his unprecedented and profoundly improper communication directing a foreign government to take adverse action against named U.S. citizens, including Pastor Dousa, on false pretenses. Ex. 6 at 136–51.  Mr. Oliveri failed to identify any basis for his claim to the Mexican government that the listed individuals likely lacked the adequate documentation to be in Mexico. *Id.* at 140–42, 146.  Nor could he identify who compiled the list of individuals and when, or why any of those individuals were named to the list. *Id.* at 148.  Mr. Oliveri testified that he transmitted an unencrypted list of the names, birthdates, and nationalities of 24 "organizers/instigators" with a baseless request despite knowing that "it wasn't going to go anywhere" and "[t]he Mexican government wasn't going to take action on this." *Id.* at 141–45, 150.

The OIG report confirms the key role that Mr. Oliveri played in the events giving rise to this case.  Not only did Mr. Oliveri state that he and his CBP co-workers "revoked" Pastor Dousa's Trusted Traveler status; he also improperly asked the Mexican government to deny her admission based on representations he has since admitted were false.  Mr. Oliveri's conduct was sufficiently serious that it prompted extended criticism from OIG and a commitment from CBP to change its policies on sharing information about U.S. citizens with foreign governments.  OIG Report at 38.  In light of this background, Defendants cannot credibly contend that Mr. Oliveri had a limited role in Operation Secure Line or that there is any excuse for his failure to conduct a basic review of his emails before he signed a declaration about Pastor Dousa and Defendants' treatment of her under penalty of perjury.

## **LEGAL ARGUMENT**

There are at least three bases for imposing sanctions here: (1) Defendants' false certification that their production of documents in response to the Court's order granting expedited discovery relevant to Pastor Dousa's preliminary injunction motion was complete; (2) Defendants' failure to comply with that discovery order; and (3) Defendants' submission of a false and misleading declaration in opposition to expedited discovery and again in opposition to Pastor's Dousa's preliminary injunction motion and in support of their motion to dismiss.

## I.   **The Court Has Multiple Sources of Authority to Impose Sanctions**

If a party or witness fails to comply with basic obligations, the Court may issue sanctions under several sources of authority. First, the Federal Rules of Civil Procedure authorize sanctions in connection with discovery misconduct. Two provisions are relevant here. Rule 26(g)(3) requires a court to impose sanctions against attorneys who improperly certify that discovery responses or objections are consistent with the rules. *See* Fed. R. Civ. P. 26(g)(1)(B)(i)–(iii). And Rule 37(b)(2) authorizes a wide range of sanctions against a party that fails to comply with a discovery order. These include but are not limited to: directing that the matters embraced in the discovery order be taken as established, prohibiting the disobedient party from supporting or opposing designated claims or defenses, striking pleadings, rendering a default judgment, or treating as contempt of court the failure to obey the order. Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii); *see also Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 101 F. Supp. 3d 856, 868–69 (C.D. Cal. 2015).

Second, the Court has inherent authority "to fashion … appropriate sanction[s] for conduct which abuses the judicial process"—particularly when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991) (citations and internal

quotation marks omitted); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (citations and internal quotation marks omitted)).  District courts in this Circuit have inherent power to sanction parties and attorneys for "willful violation[s] of a court order" or bad-faith litigation conduct. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012).  A court's inherent powers include the power to sanction discovery misconduct.  *Smith v. Simmons*, No. 05-01187, 2009 WL 1312930, at *3 (E.D. Cal. May 12, 2009).

## II.    The Court Should Impose Appropriate Sanctions for Defendants' Misconduct Under Rules 26(g)(3) and 37

### A.    Defendants violated their discovery obligations under Rule 26(g)(3)

Under Fed. R. Civ. P. 26(g)(3), "a party or attorney who signs a discovery response that is incomplete or incorrect as of the time it is made, may be sanctioned unless the signer acted with substantial justification." *Est. of Nunez by & Through Nunez v. Corr. Physicians Med. Grp., Inc.*, No. 16-1412, 2019 WL 1024397, at *1 (S.D. Cal. Mar. 4, 2019).  "Substantial justification" is found where there is, for example, "a genuine dispute about compliance with a discovery request or a breakdown in the attorney-client relationship that prevents counsel from fulfilling their obligations." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-06370, 2020 WL 2838806, at *6 (N.D. Cal. June 1, 2020).  Under the Federal Rules, counsel's signature is treated as a certification that, "to the best of [counsel's] knowledge, information, and belief formed after a reasonable inquiry," the discovery response is "complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A).  Whether an attorney's inquiry is reasonable "is measured by an objective standard and does not require a showing of bad faith." *Handloser v. HCL*

*Am., Inc.*, No. 19-01242, 2020 WL 4923971, at *4 (N.D. Cal. Aug. 21, 2020).  "If a certification violates this rule without substantial justification, the court … must impose an appropriate sanction on the signer."  Fed. R. Civ. P. 26(g)(3).

In addition to the implicit certification of completeness reflected in every discovery response, Defendants' counsel expressly represented that Defendants' production of documents in response to the Court's order granting expedited discovery was "complete[]."  *Supra* p. 5.  In light of the facts set forth above, however, Defendants' counsel could not plausibly have undertaken a "reasonable inquiry" into whether their production was actually complete.  The emails that Defendants failed to produce at that time both mentioned Pastor Dousa by name and referenced the two principal Trusted Traveler programs (SENTRI and Global Entry) at the center of this litigation.  They were obviously responsive to Pastor Dousa's requests and highly relevant to her preliminary injunction motion.

It appears that Defendants failed to produce these documents because they did not conduct *any* searches for emails at all.  That is inexcusable; Defendants had resisted expedited discovery by claiming it would impose "a colossal burden" to require them to search all of the "different components contained within [DHS]" for responsive documents.  *See supra* p. 4.  Magistrate Judge Crawford rejected that argument, yet Defendants appear to have decided unilaterally that email searches were still too much to ask.  And they did so even though they plainly expected Pastor Dousa to search her emails when they served 46 document requests.  *See supra* p. 7.  Should the Court have questions about the reasonableness of Defendants' counsel's investigation, Pastor Dousa respectfully submits that the Court issue an order to show cause why sanctions should not be imposed under these circumstances.

In any event, it bears repeating that *Defendants' own declarant*, Mr. Oliveri, either authored or received the relevant emails.  Even if Defendants could somehow

justify not searching *all* relevant custodians at that time, they *at least* had to determine whether Mr. Oliveri—who they put forward as definitively addressing Pastor Dousa's Trusted Traveler status—possessed any responsive documents. Had they made any attempt to do so, the emails at issue would have been found. And disclosure of those emails at the preliminary injunction stage could have changed the course of these proceedings; as noted, the Court relied significantly on Mr. Oliveri's declaration in denying Pastor Dousa a preliminary injunction.

Rule 26(g)(3) allows for "appropriate" sanctions in response to an improper certification. The sanctions "may include an order to pay the reasonable expenses, including attorney's fees, caused by this violation." Fed. R. Civ. P. 26(g)(3). Where defendants have failed to provide adequate certification and complete discovery, courts have ordered that they re-check their records for responsive information. *Perkins v. City of Modesto*, No. 19-00126, 2020 WL 1333109, at *6 (E.D. Cal. Mar. 23, 2020). Courts have also consistently awarded attorney's fees to cover the cost of the additional litigation caused by discovery misconduct. *See, e.g.*, *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-06370, 2020 WL 2838806, at *7 (N.D. Cal. June 1, 2020) (awarding attorney's fees where attorneys did not show substantial justification for failing to conduct a reasonable inquiry into whether their clients had appropriately responded to document requests); *R & R Sails Inc. v. Ins. Co. of State of PA*, 251 F.R.D. 520, 525 (S.D. Cal. 2008) (awarding attorney's fees and costs where the court determined that defendant had made no reasonable inquiry into whether defendant's client possessed an electronically stored claim log); *Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No. 09-1769, 2011 WL 2292326, at *6–7 (W.D. Wash. June 8, 2011) (awarding attorney's fees where a party failed to make full and complete disclosures, made inadequate and delayed responses to requests for production, and provided false certification). Further, where the discovery violations cause parties to prepare for additional litigation—beyond drafting

14

sanctions motions—courts have ordered litigants to pay attorney's fees for this supplemental work. *See, e.g.*, *Silva v. TEKsystems, Inc.,* No. 12-CV-05347, 2013 WL 3939500, at *3–4 (N.D. Cal. July 25, 2013) (ordering plaintiffs to pay defense counsel's fees for preparing witnesses for depositions that would have been unnecessary had plaintiff complied with his discovery obligations).

Pastor Dousa respectfully requests that the Court order Defendants to pay the attorney's fees and costs that arose from their discovery misconduct.

### B.    Defendants further violated their discovery obligations under Rule 37

Rule 37(b) provides for sanctions based on a party's failure to obey a discovery order.   Rule 37 provides a list of sanctions available in these circumstances, including that the court "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."   Fed. R. Civ. P. 37(b)(2)(A)(i).   "Instead of or in addition to" these sanctions, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."   Fed R. Civ. P. 37(b)(2)(C) (emphasis added).

The Ninth Circuit has recognized two key principles guiding sanctions under Rule 37(b)(2): "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 393 (N.D. Cal. 2012).   To determine if taking certain facts as established is an appropriate sanction, courts consider: "(1) culpability (including willfulness and bad faith, and whether client was responsible or solely the attorney); (2) prejudice; and (3) whether lesser sanctions would have been effective." *Tourgeman v. Collins*

*Fin. Servs., Inc.*, No. 08-1392, 2012 WL 28289, at *2 (S.D. Cal. Jan. 5, 2012). However, "[w]illfulness is not required to impose a Rule 37(b)(2)(A)(i) sanction unless the sanction amounts to dismissal or default judgment." *Id.*

Defendants clearly violated the Court's order compelling expedited discovery in connection with Pastor Dousa's preliminary injunction motion. In particular, Defendants failed to produce multiple emails stating that CBP officials had "suspended" and "revoked" Pastor Dousa's Trusted Traveler status. *See supra* pp. 6–8. Those emails were both directly responsive to Pastor Dousa's document requests and highly relevant to the Court's resolution of her preliminary injunction motion. Indeed, the emails at issue flatly contradict Mr. Oliveri's declaration, on which the Court relied significantly in denying injunctive relief. Accordingly, sanctions are warranted under Rule 37 for Defendants' failure to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2); *see also Pumphrey v. K.W. Thompson Tool Company*, 62 F.3d 1128, 1132 (9th Cir. 1995) (sanctions warranted based on a party's "use of misleading, inaccurate, and incomplete responses to discovery requests" and "failure to correct the false impressions created").

Consistent with Rule 37, Pastor Dousa submits that appropriate sanctions could include an order directing that certain "facts be taken as established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A)(i). Specifically, it should be considered "established" that CBP suspended or revoked Pastor Dousa's Trusted Traveler in late 2018, regardless of whether it is reflected in CBP databases. In addition, the Court should "strik[e]" the Oliveri declaration in its entirety, *see* Fed. R. Civ. P. 37(b)(2)(A)(iii), and "prohibit[]" the government from introducing any other evidence relating to the revocation of Pastor Dousa's Trusted Traveler status or using such evidence to support its defense, *see* Fed. R. Civ. P. 37(b)(2)(A)(ii). Short of a default judgment against the government, *see* Fed. R. Civ. P. 37(b)(2)(A)(vi), these are the only sanctions that can fully account for the harm

caused by Defendants' violation. *See Guifu Li*, 281 F.R.D. at 393 (ordering that alter ego liability be deemed established for trial where defendants failed to produce evidence to the contrary); *Carson Cheng v. AIM Sports, Inc.*, No. 10-3814, 2011 WL 13175663, at *11–12 (C.D. Cal. Aug. 23, 2011) (ordering evidentiary sanctions preventing Defendants from introducing testimony or evidence contradicting Plaintiff's technical and damages experts after finding the Defendants possessed but did not produce responsive documents).

## III. The Court Should Impose Appropriate Sanctions for Defendants' Misconduct Under Its Inherent Authority

In addition to its authority under the Federal Rules, the Court also has inherent power to impose sanctions, including "the ability to fashion an appropriate sanction for conduct with abuses the judicial process." *Est. of Nunez by & Through Nunez v. Corr. Physicians Med. Grp., Inc.*, No. 16-1412, 2019 WL 1024397, at *1 (S.D. Cal. Mar. 4, 2019), *quoting Chambers*, 501 U.S. at 44–45. This includes punishing discovery misconduct. *Smith v. Simmons*, No. 05-01187, 2009 WL 1312930, at *3 (E.D. Cal. May 12, 2009) ("Even without a prior discovery order, discovery misconduct may be punished under the Court's 'inherent powers' to manage its affairs.").

To impose sanctions under the Court's inherent authority, the Court must find either a "willful violation of a court order" or bad-faith litigation conduct. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). "[A] 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Id.*

Importantly, the Ninth Circuit has made clear that "[t]he effectiveness of and need for harsh measures is particularly evident when," as here, "the disobedient party is the government." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980). The government is a repeat litigant, and sanctions

therefore protect not only the opposing party directly harmed in a particular case, but also have a "prophylactic effect" against abuses affecting "other litigants as well." *Lewis v. Ryan*, 261 F.R.D. 513, 522 (S.D. Cal. 2009).[4]

In light of the prejudice Pastor Dousa has experienced and the need to deter future discovery misconduct by Defendants and their counsel, sanctions may be appropriate under its inherent authority. Defendants—all government agencies—represented that their production was complete, presumably with full knowledge that they had conducted *no* search for responsive emails—even emails sent or received by their own declarant, Mr. Oliveri. That is more than sufficient to demonstrate a willful violation of the Court's expedited discovery order and to justify the imposition of any sanctions the Court deems appropriate. *See Klund v. High Tech. Sols., Inc.*, No. 05-565, 2006 WL 549385, at *8 (S.D. Cal. Feb. 27, 2006) ("this Court has broad discretion to award reasonable expenses and attorney's fees caused by the failure to obey a court order to provide or permit discovery"); *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964–65 (9th Cir. 2004) (courts may "assess fines" as a function of the "inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders").

## CONCLUSION

Pastor Dousa does not file this motion for sanctions lightly. On the contrary, Pastor Dousa waited until discovery was complete to ensure that she had a full understanding of the facts prior to seeking sanctions. For the foregoing reasons,

---

[4] This admonition is particularly apt here, where, only a year after Pastor Dousa filed this case, the Department of Justice admitted submitting "false and misleading testimony" about DHS's administration of Trusted Traveler programs in another case. *See* E. Shanahan and Z. Kanno-Youngs, *Homeland Security Dept. Admits Making False Statements in Fight with N.Y.*, N.Y. Times (July 23, 2020), https://www.nytimes.com/2020/07/23/nyregion/trusted-traveler-homeland-security.html.

Pastor Dousa believes that sanctions are appropriate in light of those facts.  She has tailored the requested sanctions to address the precise concerns raised by Defendants' specific discovery failures in this case.  Accordingly, Pastor Dousa respectfully requests that the Court enter an order imposing sanctions on Defendants.

Dated: December 8, 2021      Respectfully submitted,

By:  /s/ Oscar Ramallo

ARNOLD & PORTER KAYE SCHOLER LLP

Oscar Ramallo
 oscar.ramallo@arnoldporter.com
R. Stanton Jones (*pro hac vice*)
 stanton.jones@arnoldporter.com
William C. Perdue (*pro hac vice*)
 william.perdue@arnoldporter.com
Janine M. Lopez (*pro hac vice*)
 janine.lopez@arnoldporter.com
Ada Añon (*pro hac vice*)
 ada.anon@arnoldporter.com
Christian D. Sheehan (*pro hac vice*)
 christian.sheehan@arnoldporter.com
Leah J. Harrell (*pro hac vice*)
 leah.harrell@arnoldporter.com

PROTECT DEMOCRACY PROJECT, INC.

Christine Kwon
 christine.kwon@protectdemocracy.org
Stephanie Llanes (*pro hac vice*)
 stephanie.llanes@protectdemocracy.org
Anne Tindall (*pro hac vice*)
 anne.tindall@protectdemocracy.org
Genevieve Nadeau (*pro hac vice*)
 genevieve.nadeau@protectdemocracy.org
Ben Berwick (*pro hac vice*)
 ben.berwick@protectdemocracy.org

*Attorneys for Plaintiff Kaji Dousa*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2021, I electronically filed the foregoing with the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully,

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Oscar Ramallo*
Oscar Ramallo
oscar.ramallo@arnoldporter.com